Iowa District Court for Floyd County

| | |
|---|---|
| Floyd County Board of Supervisors,<br><br>Plaintiff,<br><br>vs.<br><br>Prochaska & Associates, Inc.,<br><br>Defendant. | Case No.<br><br>Original Notice |

TO THE ABOVE-NAMED DEFENDANT:

You are notified that a Petition has been filed in the office of the Clerk of Court naming you as a Defendant in this action. A copy of the Petition (and any documents filed with it) is attached to this notice. The attorney for the Plaintiff is Roger W. Stone of Simmons Perrine Moyer Bergman PLC, whose address is 115 Third Street SE, Suite 1200, Cedar Rapids, Iowa, 52401; telephone number (319) 366-7641; and facsimile number (319) 366-1917.

You must serve a motion or answer within 20 days after service of this Original Notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Floyd County. If you do not, judgment by default may be rendered against you for the relief demanded in the Petition.

This case has been filed in a county that uses electronic filing. You must register to eFile through the Iowa Judicial Branch website at https://iowacourts.state.ia.us/Efile and obtain a log in and password for filing and viewing documents in your case and for receiving service and notices from the court.

For general rules and information on electronic filing, refer to the Iowa Court Rules Chapter 16 Pertaining to the Use of the Electronic Document Management System, available on the Iowa Judicial Branch website. For court rules on the Protection of Personal Privacy in court filings, refer to Division VI of the Iowa Court Rules Chapter 16. If you are unable to proceed electronically, you must receive permission from the court to file in paper. Contact the clerk of court in the county where the petition was filed for more information on being excused from electronic filing.

If you require the assistance of auxiliary aids or services to participate in court due to a disability, immediately call your District ADA Coordinator at 641-421-0990. If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942. Disability coordinators cannot provide legal advice.

YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.

Exhibit A

# Iowa Judicial Branch

*Case No.* **LACV031736**
*County* **Floyd**

*Case Title* FLOYD COUNTY BOARD OF SUPERVISORS VS PROCHASKA

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential. For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(641) 421-0990** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/. **Disability access coordinators cannot provide legal advice.**

*Date Issued* **07/27/2021 02:51:58 PM**



*District Clerk of* Floyd        *County*
**/s/ Beth Eilderts**

Iowa District Court for Floyd County

| | |
|---|---|
| Floyd County Board of Supervisors,<br><br>    Plaintiff,<br><br>vs.<br><br>Prochaska & Associates, Inc.,<br><br>    Defendant. | Case No.<br><br>    Petition and Jury Demand |

Floyd County Board of Supervisors ("Plaintiff"), by its attorneys, for its Petition against

Prochaska & Associates, Inc. ("Defendant") states and alleges as follows:

### Parties

1.  Floyd County Board of Supervisors is located in Floyd County, Iowa.

2.  Prochaska & Associates, Inc. a Nebraska corporation with its principal place of business

in Omaha, Douglas County, Nebraska.

### Jurisdiction and Venue

3.  This Honorable Court has jurisdiction over the instant case because the amount in

controversy exceeds the required jurisdictional threshold.

4.  Because the Petition concerns a written contract to be performed in a particular place,

specifically, Floyd County, Iowa Code section 616.7 provides for venue in the county of

performance of the contractual obligations.

### Factual Allegations

5.  On or about November 10, 2017, Defendant, pursuant to Plaintiff's request, prepared and

submitted cost projections for a project described as Floyd County Law Enforcement Center –

1

Architectural Services for the construction of the Floyd County Law Enforcement Center in Charles City, IA ("Project").

6.   From the cost projections, Plaintiff chose budget Option 1: Single Story 32 Bed FCJC Addition & Courthouse Renovations in the amount of $12,706,720.00 for the Project.

7.   On or about February 19, 2018, Defendant submitted to Plaintiff a Pre-Design Budget of $10,898,700.00 for the construction budget total for the Project.

8.   On or about May 1, 2018, Plaintiff went to bond referendum with $13,500,000.00 based on their selection of budget Option 1: Single Story 32 Bed FCJC Addition & Courthouse Renovations and Defendant's cost projection and Pre-Design Budget for the Project.

9.   On or about June 6, 2018, Plaintiff, as owner, and Defendant, as architect, entered into a Standard Form of Agreement Between Owner and Architect ("Agreement") for the Project.  A copy of the Agreement is attached as Exhibit 1.

10. Pursuant to §1.1.3 of the Agreement, Defendant was to "complete design of the project as described above…not to exceed the Construction budget figure" of $10,898,700.00.

11. In March, April, and May 2019, Defendant submitted corrected budget worksheets to Plaintiff showing a "Grand Total Project Estimate" of $13,737,123.00 exceeding the Bond Amount of $13,500,000.00.

12. The final Contract sum to Date was approximately $16,074,469.00 as shown on Pay App. No. 18, as certified by Defendant.

13. Defendant breached its Contract with the Plaintiff because Defendant did not design a project within the not to exceed Construction budget figure of $10,898,700.00.

2

14. Further, there have been over 30 change orders to date due to items Defendant omitted from the original plans and specifications for the Project used for bidding the Project.

### Count 1 – Breach of Contract

15. Plaintiff incorporates the allegations in paragraphs 1 - 14.

16. Plaintiff and Defendant executed the Agreement.

17. Defendant did not perform its obligations pursuant to the Agreement.

18. Defendant was bound to all terms and conditions of the Agreement.

19. Defendant breached the Agreement, including without limitation, §1.1.3 of the Agreement, "…Prochaska & Associates will complete design of the project as described above…not to exceed the Construction budget figure…"

20. Defendant's breaches of the Agreement caused damage to Plaintiff.

21. Plaintiff's damages resulting from Defendant's breaches of the Agreement include without limitation, the amount due to Plaintiff for costs exceeding the construction budget figure referenced in §1.1.3 of the Agreement.

22. Defendant's breach of the Agreement also constitutes a material breach of the Agreement which entitles Plaintiff to a declaration that no fee is owed to Defendant other than the fee that it would have earned had it not breached §1.1.3 of the Agreement.

Therefore, Plaintiff respectfully requests this court enter judgment against the Defendant for all damages suffered by the Plaintiff in an amount to be determined by a jury, declare that Plaintiff is entitled to a judgment to the effect that no fee is owed to Defendant other than the fee that it would have earned had it not breached §1.1.3 of the Agreement, award Plaintiff its

3

attorney's fees, tax costs to the Defendant and accord the Plaintiff such other relief as is just and reasonable.

## Count 2 – Professional Negligence

23. Plaintiff incorporates the allegations in paragraphs 1 -22.

24. Defendant or some of its employees were licensed to practice architecture in the State of Iowa and provided architectural services to the Plaintiff for the Project.

25. Defendant had a professional duty owing to the Plaintiff to provide architectural services in accordance with the standard of care applicable to architects in Iowa.

26. Defendant breached its standard of care in the performance of its duties for Plaintiff.

27. Plaintiff has suffered damages as a result of the Defendant's breach of its standard of care including without limitation, the amount due to Plaintiff for costs exceeding the construction budget figure referenced in §1.1.3 of the Agreement and increased costs of Change Orders negotiated or priced during construction of the Project which Change Order costs would have been lower had the work been included in the original plans and specifications provided to the prospective bidders for the project.

Therefore, Plaintiff respectfully requests this court enter judgment against the Defendant for all damages suffered by the Plaintiff in an amount to be determined by a jury, award Plaintiff its attorney's fees, tax costs to the Defendant and accord the Plaintiff such other relief as is just and reasonable.

## Count 3 – Equitable Indemnity

28. Plaintiff incorporates the allegations in paragraphs 1 -27.

4

29. Defendant or some of its employees were licensed to practice architecture in the State of Iowa and provided architectural services to the Plaintiff for the Project.

30. Defendant had a professional duty owing to the Plaintiff to provide architectural services in accordance with the standard of care applicable to architects in Iowa.

31. Defendant breached its standard of care in the performance of its duties for Plaintiff.

32. Plaintiff is entitled to indemnity from Defendant for costs it incurred and paid to third parties to perform work on the Project, including without limitation, the amount due to Plaintiff for costs exceeding the construction budget figure referenced in §1.1.3 of the Agreement and increased costs of Change Orders negotiated or priced during construction of the Project which Change Order costs would have been lower had the work been included in the original plans and specifications provided to the prospective bidders for the project.

Therefore, Plaintiff respectfully requests this court enter judgment against the Defendant requiring it to indemnify for payments by Plaintiff to third parties in an amount to be determined by a jury, award Plaintiff its attorney's fees, tax costs to the Defendant and accord the Plaintiff such other relief as is just and reasonable.

Plaintiff demands a jury trial on all counts triable to a jury.

Dated: July 27, 2021                    Respectfully submitted,

                                        */s/ Roger W. Stone*
                                        Roger W. Stone          AT0007519
                                        Simmons Perrine Moyer Bergman PLC
                                        115 Third Street, S.E., Suite 1200
                                        Cedar Rapids, IA 52401-1266
                                        Telephone: (319) 366-7641
                                        Facsimile: (319) 366-1917
                                        Email: rstone@spmblaw.com
                                        *Attorney for Plaintiff*



# AIA® Document B132™ – 2009

## *Standard Form of Agreement Between Owner and Architect,* Construction Manager as Adviser Edition

**AGREEMENT** made as of the Sixth day of June in the year 2018
*(In words, indicate day, month and year.)*

**BETWEEN** the Architect's client identified as the Owner:
*(Name, legal status, address and other information)*

Floyd County Board of Supervisors
101 S. Main St.
Suite 304
Charles City, IA 50616

and the Architect:
*(Name, legal status, address and other information)*

Prochaska & Associates
11317 Chicago Circle
Omaha, NE 68154-2633

for the following Project:
*(Name, location and detailed description)*

Floyd County Law Enforcement Center
Architectural Services for the construction of the Floyd County Law Enforcement Center
in Charles City, IA
See further description in Article 1 Initial Information

The Construction Manager:
*(Name, legal status, address and other information)*

Unknown at time of execution

With assistance from the Architect, the Owner will develop the Request for Proposals to
retain the services of a Construction Manager as Advisor (CMA) for the Project.

The Owner and Architect agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document is intended to be used in conjunction with AIA Documents A132™–2009, Standard Form of Agreement Between Owner and Contractor, Construction Manager as Adviser Edition; A232™–2009, General Conditions of the Contract for Construction, Construction Manager as Adviser Edition; and C132™–2009, Standard Form of Agreement Between Owner and Construction Manager as Adviser. AIA Document A232™–2009 is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

**Init.**

/

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes:**                                                                          (1382829686)

1

TABLE OF ARTICLES

1      INITIAL INFORMATION

2      ARCHITECT'S RESPONSIBILITIES

3      SCOPE OF ARCHITECT'S BASIC SERVICES

4      ADDITIONAL SERVICES

5      OWNER'S RESPONSIBILITIES

6      COST OF THE WORK

7      COPYRIGHTS AND LICENSES

8      CLAIMS AND DISPUTES

9      TERMINATION OR SUSPENSION

10     MISCELLANEOUS PROVISIONS

11     COMPENSATION

12     SPECIAL TERMS AND CONDITIONS

13     SCOPE OF THE AGREEMENT

**ARTICLE 1 INITIAL INFORMATION**
**§ 1.1** This Agreement is based on the Initial Information set forth in this Section 1.1.
*(Note the disposition for the following items by inserting the requested information or a statement such as "not applicable," "unknown at time of execution" or "to be determined later by mutual agreement.")*

**§ 1.1.1** The Owner's program for the Project:
*(Identify documentation or state the manner in which the program will be developed.)*

The Program for the Floyd County Law Enforcement Center was first developed as part of the April 13, 2017 *Part 1 Needs Assessments Study,* and then updated as part of the November 10, 2017 *Part 2, Facility Development* document, both prepared by Prochaska & Associates, , and is itemized in Section 2, beginning on page 2.1. It is intended that, working with representatives of Floyd County, the Program will be finalized as part of this Agreement's *Schematic Design Phase.*

**§ 1.1.2** The Project's physical characteristics:
*(Identify or describe, if appropriate, size, location, dimensions, or other pertinent information, such as geotechnical reports; site, boundary and topographic surveys; traffic and utility studies; availability of public and private utilities and services; legal description of the site; etc.)*

Four Planning Options were developed as part of the 2017 *Part 2, Facility Development* document, and based on Options 1, 2 & 4, construction of a new Justice Center on acquired residential properties West of vacated South Jackson Street right-of-way, as well as the West side of the existing Courthouse property was pursued. Option 3 considered closing the current jail, creating an IDOC-compliant Holding facility, and transporting all inmates to other out-of-county jails. Based upon direction from the County Board of Supervisors and Sheriff, the decision was made to implement the design for Option 1B, as described in the referenced *Facility Development* document, and as revised by more recent Bond promotion presentation materials, dated February 19th, 2018. The final design is for a 32,346 gross square foot (GSF) 32-bed Jail and Jail support space, Sheriff's Department, and a shared Training/Multi-purpose Room. The Law Enforcement Center site will be master planned to permit expansion in the future if necessary. The *Part 2 Facility Development* document also developed options for reuse of the vacated spaces in the existing

**Init.**

**/**

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No 4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:**                                      (1382829686)

2

Courthouse, consisting of relocation of several other county departments. Renovated areas in the existing Courthouse totaled 14,125 GSF, per the latest February 19th, 2018 documents. As agreed to by the Floyd County **Board of Supervisors,** the new addition will abut the west side of the existing Courthouse building with a multi-story atrium containing new elevators, stairs, and ADA accessible Toilet Rooms.

The existing Courthouse will be served with a new mechanical plant contained in the Justice Center Addition, and all exterior Courthouse windows will also be replaced with energy efficient units. Energy Management Improvement (EMI) issues listed by previous studies conducted by Floyd County, and communicated to Prochaska & Associates will be implemented, or alternatives deemed to be mutually acceptable to all parties to this Agreement.

Facility vehicle parking will consist of 19 new on-site stalls and 24 proposed diagonal right-of-way stalls on Court Street, in addition to the existing 52 stalls in the lot north of Court Street. Prochaska & Associates will negotiate with the City of Charles City Planning Department to gain permission for the Court Street right-of-way stalls.

The Justice Center Addition will also comply with a Board of Supervisors requirement that the Main Floor level be set at 1 foot above the formal 500-year flood elevation.

Because the Courthouse building is listed on the National Historic Register of Historic Places (NRHP), Prochaska & Associates will also interact and negotiate with the National Park Service for a final design solution acceptable to all parties, and based upon the above descriptive parameters, Work described by the reference document "Report of Site Visit" (September 3, 2009, and prepared by Douglas J. Steinmetz, Architect, will form the basis for discussions.

**§ 1.1.3** The Owner's budget for the Cost of the Work, as defined in Section 6.1:
*(Provide total and, if known, a line item breakdown.)*

A Bond value of $13,500,000.00, containing an estimated construction budget of $10,898,700.00, was passed by the voters of Floyd County on May 1st, 2018. Together with assistance from the Construction Manager (Advisor), Prochaska & Associates will complete design of the project as described above, and documented by the *Part 2, Facility Development,* not to exceed the Construction budget figure. Miscellaneous budget costs ("Soft Costs") include several items estimated at this time with benefit of all known and provided information, but possess a measure of uncertainty.

**§ 1.1.4** The Owner's anticipated design and construction schedule:

    **.1**    Design phase milestone dates, if any:

        The Schematic Design phase will commence immediately, with an anticipated Bid Date targeted for April of 2019. A preliminary draft Schedule will be developed immediately with additional milestone intermediate dates acceptable to all parties.

    **.2**    Commencement of construction:

        A Construction date of Commencement is not known with certainty at this time, but is targeted for May of 2019.

    **.3**    Substantial Completion date or milestone dates:

        Unknown at time of execution of this Agreement, but will be established with greater certainty with assistance from Owner's selected Construction Manager prior to the Project Bid Date.

    **.4**    Other:

        None

**§ 1.1.5** The Owner intends to retain a Construction Manager adviser and:
*(Note that, if Multiple Prime Contractors are used, the term "Contractor" as referred to throughout this Agreement will be as if plural in number.)*

**Init.**

**/**

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes: (1382829686)

**3**

[ ]    One Contractor

[ ]    Multiple Prime Contractors

[ X ]    Unknown at time of execution

**§ 1.1.6** The Owner's requirements for accelerated or fast-track scheduling, multiple bid packages, or phased construction are set forth below:
*(List number and type of bid/procurement packages.)*

Unknown at time of execution of this Agreement, but if desired by the Owner, will be determined during the Architect's Basic Services Phases, and with input provided by the Owner and Owner's selected Construction Manager.

**§ 1.1.7** Other Project information:
*(Identify special characteristics or needs of the Project not provided elsewhere, such as environmentally responsible design or historic preservation requirements.)*

None

**§ 1.1.8** The Owner identifies the following representative in accordance with Section 5.5:
*(List name, address and other information.)*

Linda Tjaden, Board of Supervisors, Floyd County Jail Committee Chair
101 S. Main St.
Suite 304
Charles City, IA 50616

**§ 1.1.9** The persons or entities, in addition to the Owner's representative, who are required to review the Architect's submittals to the Owner are as follows:
*(List name, address and other information.)*

Linda Tjaden – Chair of Floyd County Board of Supervisors
Mark Kuhn - Vice Chair of Floyd County Board of Supervisors
Jeff Crooks – Floyd County Sheriff
Iowa State Fire Marshal's Office
Iowa Jail Standards

**§ 1.1.10** The Owner will retain the following consultants:
*(List name, legal status, address and other information.)*

    .1    Construction Manager: The Construction Manager is identified on the cover page. If a Construction Manager has not been retained as of the date of this Agreement, state the anticipated date of retention:

    Unknown at time of execution of this Agreement. Pending the Owner's approval, the Construction Manager selection process may begin during the Schematic Design or Design Development Phases, in order for the Construction Manager to assist with development of an accurate Project Budget.

    .2    Cost Consultant (if in addition to the Construction Manager):
    *(If a Cost Consultant is retained, appropriate references to the Cost Consultant should be inserted in Sections 3.2.6, 3.2.7, 3.3.2, 3.3.3, 3.4.5, 3.4.6, 5.4, 6.3, 6.3.1, 6.4 and 11.6.)*

    Not Applicable (NA)

---

**Init.**

**/**

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:**                    (1382829686)

**4**

.3 Land Surveyor:

Unknown at time of execution of this Agreement, but anticipated to be selected by the Owner with assistance from the Architect as early as possible during the Schematic Design phase.

.4 Geotechnical Engineer:

Unknown at time of execution of this Agreement, but anticipated to be selected by the Owner with assistance from the Architect as early as possible during the Schematic Design phase.

.5 Civil Engineer:

Unknown at time of execution of this Agreement.
On behalf of the Owner, the Architect may retain an outside Civil Engineering consultant under Basic Services.

.6 Other consultants:
*(List any other consultants retained by the Owner, such as a Project or Program Manager, or scheduling consultant.)*

Unknown at time of execution of this Agreement.

**§ 1.1.11** The Architect identifies the following representative in accordance with Section 2.4:
*(List name, address and other information.)*

Donald Prochaska, President/Architect/Project Principal
Jim Classe, AIA, Vice President of Design, Design Architect
Curtis Field, AIA, Project Manager
William Huey, Vice President, Architect, Construction Administrator
Prochaska & Associates
11317 Chicago Circle
Omaha, Nebraska 68154-2633

**§ 1.1.12** The Architect will retain the consultants identified in Sections 1.1.12.1 and 1.1.12.2:
*(List name, legal status, address and other information.)*

**§ 1.1.12.1** Consultants retained under Basic Services:
.1 Structural Engineer:

Not Applicable-in house Structural Staff

**AIA Document B132™ – 2009.** Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes: (1382829686)

Init.

/

5

 **.2** Mechanical Engineer:

  Not Applicable-in-house Mechanical Staff

 **.3** Electrical Engineer:

  Not Applicable- in-house Electrical Staff

 **.4** Civil Engineering:

  Per Section 1.1.10.5, the Architect may elect to retain, on behalf of the Owner, additional Civil
  Engineering consultants to supplement the Architect's in-house Civil staff.

§ **1.1.12.2** Consultants retained under Additional Services:

Not Applicable

§ **1.1.13** Other Initial Information on which the Agreement is based:

None

§ **1.2** The Owner and Architect may rely on the Initial Information. Both parties, however, recognize that such information may materially change and, in that event, the Owner and the Architect shall appropriately adjust the schedule, the Architect's services and the Architect's compensation.

## ARTICLE 2  ARCHITECT'S RESPONSIBILITIES
§ **2.1** The Architect shall provide the professional services as set forth in this Agreement.

§ **2.2** The Architect shall perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances. The Architect shall perform its services as expeditiously as is consistent with such professional skill and care and the orderly progress of the Project.

§ **2.3** The Architect shall provide its services in conjunction with the services of a Construction Manager as described in AIA Document C132™–2009, Standard Form of Agreement Between Owner and Construction Manager. The Architect shall not be responsible for actions taken by the Construction Manager.

§ **2.4** The Architect shall identify a representative authorized to act on behalf of the Architect with respect to the Project.

§ **2.5** Except with the Owner's knowledge and consent, the Architect shall not engage in any activity, or accept any employment, interest or contribution that would reasonably appear to compromise the Architect's professional judgment with respect to this Project.

**Init.**

**/**

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.** Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No 4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:** (1382829686)

**6**

**§ 2.6** The Architect shall maintain the following insurance for the duration of this Agreement. If any of the requirements set forth below exceed the types and limits the Architect normally maintains, the Owner shall reimburse the Architect for any additional cost.

**§ 2.6.1** Comprehensive General Liability with policy limits of not less than     Two Million Dollars ($2,000,000.00) for each occurrence and in the aggregate for bodily injury and property damage.

**§ 2.6.2** Automobile Liability covering owned and rented vehicles operated by the Architect with policy limits of not less than One Million Dollars ($ 1,000,000.00 ) combined single limit and aggregate for bodily injury and property damage.

**§ 2.6.3** The Architect may use umbrella or excess liability insurance to achieve the required coverage for Comprehensive General Liability and Automobile Liability, provided that such umbrella or excess insurance results in the same type of coverage as required for the individual policies.

**§ 2.6.4** Workers' Compensation at statutory limits and Employers Liability with a policy limit of not less than Five Hundred Thousand Dollars ($ 500,000.00 per accident, $500,000 per disease and $500,000 policy limit on disease.

**§ 2.6.5** Professional Liability covering the Architect's negligent acts, errors and omissions in its performance of professional services with policy limits of not less than One Million Dollars ($ 1,000,000.00 ) per claim and in the aggregate Two Million Dollars ($2,000,000).

**§ 2.6.6** The Architect shall provide to the Owner certificates of insurance evidencing compliance with the requirements in this Section 2.6. The certificates will show the Owner as an additional insured on the Comprehensive General Liability, Automobile Liability, umbrella or excess policies.

## ARTICLE 3 SCOPE OF ARCHITECT'S BASIC SERVICES
**§ 3.1** The Architect's Basic Services consist of those described in Article 3 and include usual and customary structural, mechanical, and electrical engineering services. Services not set forth in this Article 3 are Additional Services.

**§ 3.1.1** The Architect shall manage the Architect's services, consult with the Owner and the Construction Manager, research applicable design criteria, attend Project meetings, communicate with members of the Project team and report progress to the Owner.

**§ 3.1.2** The Architect shall coordinate its services with those services provided by the Owner, the Construction Manager and the Owner's other consultants. The Architect shall be entitled to rely on the accuracy and completeness of services and information furnished by the Owner, the Construction Manager, and the Owner's other consultants. The Architect shall provide prompt written notice to the Owner if the Architect becomes aware of any error, omission or inconsistency in such services or information.

**§ 3.1.3** As soon as practicable after the date of this Agreement, the Architect shall submit to the Owner and the Construction Manager a schedule of the Architect's services for inclusion in the Project schedule prepared by the Construction Manager. The schedule of the Architect's services shall include design milestone dates, anticipated dates when cost estimates or design reviews may occur, and allowances for periods of time required (1) for the Owner's review, (2) for the Construction Manager's review, (3) for the performance of the Owner's consultants, and (4) for approval of submissions by authorities having jurisdiction over the Project.

**§ 3.1.4** The Architect shall submit information to the Construction Manager and participate in developing and revising the Project schedule as it relates to the Architect's services.

**§ 3.1.5** Once the Owner and the Architect agree to the time limits established by the Project schedule, the Owner and the Architect shall not exceed them, except for reasonable cause.

**§ 3.1.6** The Architect shall not be responsible for an Owner's directive or substitution, or for the Owner's acceptance of non-conforming Work, made without the Architect's approval.

**Init.**

/

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes:                                                     (1382829686)

**7**

**§ 3.1.7** The Architect shall, at appropriate times, in coordination with the Construction Manager, contact the governmental authorities required to approve the Construction Documents and the entities providing utility services to the Project. In designing the Project, the Architect shall respond to applicable design requirements imposed by such governmental authorities and by such entities providing utility services.

**§ 3.1.8** The Architect shall assist the Owner and Construction Manager in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

### § 3.2 Schematic Design Phase Services
*(It is anticipated that retention of the Construction Manager will not be completed until near the end of the Schematic Design Phase, or beginning of the Design Development Phase.).*
**§ 3.2.1** The Architect shall review the program previously completed and revised during the *Parts 1 and 2 Needs Assessment and Facility Development* phases, and other information furnished by the Owner, and shall review laws, codes, and regulations applicable to the Architect's services.

**§ 3.2.2** The Architect shall prepare a preliminary evaluation of the Owner's program, schedule, budget for the Cost of the Work, Project site, and the proposed procurement or delivery method and other Initial Information, each in terms of the other, to ascertain the requirements of the Project. The Architect shall notify the Owner of (1) any inconsistencies discovered in the information, and (2) other information or consulting services that may be reasonably needed for the Project. *(Most of these items were completed under the previous Parts 1 and 2 Needs Assessment and Facility Development phases).*

**§ 3.2.3** The Architect shall present its preliminary evaluation to the Owner and shall discuss with the Owner alternative approaches to design and construction of the Project, including the feasibility of incorporating environmentally responsible design approaches. The Architect shall reach an understanding with the Owner regarding the requirements of the Project.

**§ 3.2.4** Based on the Project requirements agreed upon with the Owner, the Architect shall prepare and present to the Owner, for the Owner's approval, a preliminary design illustrating the scale and relationship of the Project components.

**§ 3.2.5** Based on the Owner's approval of the preliminary design, the Architect shall prepare Schematic Design Documents for the Owner's approval. The Schematic Design Documents shall consist of drawings and other documents including a site plan, if appropriate, and preliminary building plans, sections and elevations; and may include some combination of study models, perspective sketches, or digital modeling. Preliminary selections of major building systems and construction materials shall be noted on the drawings or described in writing.

**§ 3.2.5.1** The Architect shall consider environmentally responsible design alternatives, such as material choices and building orientation, together with other considerations based on program and aesthetics, in developing a design that is consistent with the Owner's program, schedule and budget for the Cost of the Work. The Owner may obtain other environmentally responsible design services under Article 4.

**§ 3.2.5.2** The Architect shall consider with the Owner the value of alternative materials, building systems and equipment, together with other considerations based on program and aesthetics in developing a design for the Project that is consistent with the Owner's schedule and budget for the Cost of the Work.

**§ 3.2.6** The Architect shall submit the Schematic Design Documents to the Owner (and to Construction Managers during the RFP process, when requested).

**§ 3.2.7** After retention of the Construction Manager, and upon receipt of the Construction Manager's review comments and cost estimate at the conclusion of the Schematic Design Phase (if the CMA has been retained at this point), the Architect shall take action as required under Section 6.4, identify agreed upon adjustments to the Project's size, quality or budget, and request the Owner's approval of the Schematic Design Documents. If a CMA has not yet been retained, the Architect will provide Cost Estimate updates as necessary. If revisions to the Schematic Design Documents are required to comply with the Owner's budget for the Cost of the Work at the conclusion of the Schematic Design Phase, the Architect shall incorporate the required revisions in the Design Development Phase.

**Init.**

**/**

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:**                                                                                                                    (1382829686)

8

**§ 3.2.8** In the further development of the Drawings and Specifications during this and subsequent phases of design, the Architect shall be entitled to rely on the accuracy of the estimates of the Cost of the Work, which are to be provided by the Construction Manager under the Construction Manager's agreement with the Owner.

### § 3.3 Design Development Phase Services
**§ 3.3.1** Based on the Owner's approval of the Schematic Design Documents, and on the Owner's authorization of any adjustments in the Project requirements and the budget for the Cost of the Work pursuant to Section 5.4, the Architect shall prepare Design Development Documents for the Owner's approval and the Construction Manager's review. The Design Development Documents shall be based upon information provided, and estimates prepared by, the Construction Manager and shall illustrate and describe the development of the approved Schematic Design Documents and shall consist of drawings and other documents including plans, sections, elevations, typical construction details, and diagrammatic layouts of building systems to fix and describe the size and character of the Project as to architectural, structural, mechanical and electrical systems, and such other elements as may be appropriate. The Design Development Documents shall also include outline specifications that identify major materials and systems and establish in general their quality levels.

**§ 3.3.2** Prior to the conclusion of the Design Development Phase, the Architect shall submit the Design Development Documents to the Owner and the Construction Manager. The Architect shall meet with the Construction Manager to review the Design Development Documents.

**§ 3.3.3** Upon receipt of the Construction Manager's information and estimate at the conclusion of the Design Development Phase, the Architect shall take action as required under Sections 6.5 and 6.6 and request the Owner's approval of the Design Development Documents.

### § 3.4 Construction Documents Phase Services
**§ 3.4.1** Based on the Owner's approval of the Design Development Documents, and on the Owner's authorization of any adjustments in the Project requirements and the budget for the Cost of the Work, the Architect shall prepare Construction Documents for the Owner's approval and the Construction Manager's review. The Construction Documents shall illustrate and describe the further development of the approved Design Development Documents and shall consist of Drawings and Specifications setting forth in detail the quality levels of materials and systems and other requirements for the construction of the Work. The Owner and Architect acknowledge that in order to construct the Work the Contractor will provide additional information, including Shop Drawings, Product Data, Samples and other similar submittals, which the Architect shall review in accordance with Section 3.6.4.

**§ 3.4.2** The Architect shall incorporate into the Construction Documents the design requirements of governmental authorities having jurisdiction over the Project.

**§ 3.4.3** During the development of the Construction Documents, if requested by the Owner, the Architect shall assist the Owner and the Construction Manager in the development and preparation of (1) bidding and procurement information that describes the time, place and conditions of bidding, including bidding or proposal forms; (2) the form of agreement between the Owner and Contractor; and (3) the Conditions of the Contract for Construction (General, Supplementary and other Conditions); and (4) compile a project manual that includes the Conditions of the Contract for Construction and may include bidding requirements and sample forms.

**§ 3.4.4** Prior to the conclusion of the Construction Documents Phase, the Architect shall submit the Construction Documents to the Owner and the Construction Manager. The Architect shall meet with the Construction Manager to review the Construction Documents.

**§ 3.4.5** Upon receipt of the Construction Manager's information and estimate at the conclusion of the Construction Documents Phase, the Architect shall take action as required under Section 6.7 and request the Owner's approval of the Construction Documents.

### § 3.5 Bidding or Negotiation Phase Services
#### § 3.5.1 General
The Architect shall assist the Owner and Construction Manager in establishing a list of prospective contractors. Following the Owner's approval of the Construction Documents, the Architect shall assist the Owner and

**AIA Document B132™ – 2009.** Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes: (1382829686)

Init.
/

9

Construction Manager in (1) obtaining competitive bids; (2) confirming responsiveness of bids or proposals; (3) determining the successful bid or proposal, if any; and (4) awarding and preparing contracts for construction.

**§ 3.5.2 Competitive Bidding**
**§ 3.5.2.1** Bidding Documents shall consist of bidding requirements and proposed Contract Documents.

**§ 3.5.2.2** The Architect shall assist the Owner and Construction Manager in bidding the Project by
  .1  facilitating the reproduction of Bidding Documents for distribution to prospective bidders,
  .2  participating in a pre-bid conference for prospective bidders, and
  .3  preparing responses to questions from prospective bidders and providing clarifications and interpretations of the Bidding Documents in the form of addenda.

**§ 3.5.2.3** The Architect shall consider requests for substitutions, if the Bidding Documents permit substitutions, and shall consult with the Construction Manager and prepare and distribute addenda identifying approved substitutions to all prospective bidders.

*(Paragraphs deleted)*
**§ 3.6 Construction Phase Services**
**§ 3.6.1 General**
**§ 3.6.1.1** The Architect shall provide administration of the Contract between the Owner and the Contractor as set forth below and in AIA Document A232™–2009, General Conditions of the Contract for Construction, Construction Manager as Adviser Edition. If the Owner and Contractor modify AIA Document A232–2009, those modifications shall not affect the Architect's services under this Agreement unless the Owner and the Architect amend this Agreement.

**§ 3.6.1.2** The Architect shall advise and consult with the Owner and Construction Manager during the Construction Phase Services. The Architect shall have authority to act on behalf of the Owner only to the extent provided in this Agreement. The Architect shall not have control over, charge of, or responsibility for the construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, nor shall the Architect be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect shall be responsible for the Architect's negligent acts or omissions, but shall not have control over or charge of, and shall not be responsible for, acts or omissions of the Construction Manager, or the Contractor or of any other persons or entities performing portions of the Work.

**§ 3.6.1.3** Subject to Section 4.3, the Architect's responsibility to provide Construction Phase Services commences with the award of the Contract for Construction and terminates on the date the Architect issues the final Certificate for Payment.

**§ 3.6.2 Evaluations of the Work**
**§ 3.6.2.1** The Architect shall visit the site at intervals appropriate to the stage of construction, or as otherwise required in Section 4.3.3, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine, in general, if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of the site visits, the Architect shall keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner and the Construction Manager (1) known deviations from the Contract Documents and from the most recent construction schedule, and (2) defects and deficiencies observed in the Work.

**§ 3.6.2.2** The Architect has the authority to reject Work that does not conform to the Contract Documents and shall notify the Construction Manager about the rejection. Whenever the Architect considers it necessary or advisable, the Architect, upon written authorization from the Owner and notification to the Construction Manager, shall have the authority to require inspection or testing of the Work in accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees or other persons or entities performing portions of the Work.

**Init.**

**/**

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:**                                                                                                (1382829686)

**10**

§ **3.6.2.3** The Architect shall interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of the Construction Manager, Owner, or Contractor through the Construction Manager. The Architect's response to such requests shall be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

§ **3.6.2.4** Interpretations and decisions of the Architect shall be consistent with the intent of and reasonably inferable from the Contract Documents and shall be in writing or in the form of drawings. When making such interpretations and decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractor, shall not show partiality to either, and shall not be liable for results of interpretations or decisions rendered in good faith. The Architect's decisions on matters relating to aesthetic effect shall be final if consistent with the intent expressed in the Contract Documents.

§ **3.6.2.5** Unless the Owner and Contractor designate another person to serve as an Initial Decision Maker, as that term is defined in AIA Document A232–2009, the Architect shall render initial decisions on Claims between the Owner and Contractor as provided in the Contract Documents.

§ **3.6.3 Certificates for Payment to Contractor**
§ **3.6.3.1** The Architect shall review and certify an application for payment not more frequently than monthly. Within seven days after the Architect receives an application for payment forwarded from the Construction Manager, the Architect shall review and certify the application as follows:

    .1   Where there is only one Contractor responsible for performing the Work, the Architect shall review the Contractor's Application and Certificate for Payment that the Construction Manager has previously reviewed and certified. The Architect shall certify the amount due the Contractor and shall issue a Certificate for Payment in such amount.

    .2   Where there are Multiple Prime Contractors responsible for performing different portions of the Project, the Architect shall review a Project Application and Project Certificate for Payment, with a Summary of Contractors' Applications for Payment that the Construction Manager has previously prepared, reviewed and certified. The Architect shall certify the amounts due the Contractors and shall issue a Project Certificate for Payment in the total of such amounts.

§ **3.6.3.2** The Architect's certification for payment shall constitute a representation to the Owner, based on (1) the Architect's evaluation of the Work as provided in Section 3.6.2, (2) the data comprising the Contractor's Application for Payment or the data comprising the Project Application for Payment, and (3) the recommendation of the Construction Manager, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject (1) to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, (2) to results of subsequent tests and inspections, (3) to correction of minor deviations from the Contract Documents prior to completion, and (4) to specific qualifications expressed by the Architect.

§ **3.6.3.3** The issuance of a Certificate for Payment or a Project Certificate for Payment shall not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) ascertained how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

§ **3.6.3.4** The Architect shall maintain a record of the applications and certificates for payment.

§ **3.6.4 Submittals**
§ **3.6.4.1** The Architect shall review the Construction Manager's Project submittal schedule and shall not unreasonably delay or withhold approval. The Architect's action in reviewing submittals transmitted by the Construction Manager shall be taken in accordance with the approved submittal schedule or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review.

**Init.**

**/**

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes: (1382829686)

**11**

**§ 3.6.4.2** In accordance with the Architect-approved Project submittal schedule, and after the Construction Manager reviews, approves and transmits the submittals, the Architect shall review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. Review of such submittals is not for the purpose of determining the accuracy and completeness of other information such as dimensions, quantities, and installation or performance of equipment or systems, which are the Contractor's responsibility. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**§ 3.6.4.3** If the Contract Documents specifically require the Contractor to provide professional design services or certifications by a design professional related to systems, materials or equipment, the Architect shall specify the appropriate performance and design criteria that such services must satisfy. The Architect shall review shop drawings and other submittals related to the Work designed or certified by the design professional retained by the Contractor that bear such professional's seal and signature when submitted to the Architect. The Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and approvals performed or provided by such design professionals.

**§ 3.6.4.4** After receipt of the Construction Manager's recommendations, and subject to the provisions of Section 4.3, the Architect shall review and respond to requests for information about the Contract Documents. The Architect, in consultation with the Construction Manager, shall set forth in the Contract Documents the requirements for requests for information. Requests for information shall include, at a minimum, a detailed written statement that indicates the specific Drawings or Specifications in need of clarification and the nature of the clarification requested. The Architect's response to such requests shall be made in writing within any time limits agreed upon, or otherwise with reasonable promptness. If appropriate, the Architect shall prepare and issue supplemental Drawings and Specifications in response to requests for information.

**§ 3.6.4.5** The Architect shall maintain a record of submittals and copies of submittals transmitted by the Construction Manager in accordance with the requirements of the Contract Documents.

### § 3.6.5 Changes in the Work
**§ 3.6.5.1** The Architect shall review and sign, or take other appropriate action, on Change Orders and Construction Change Directives prepared by the Construction Manager for the Owner's approval and execution in accordance with the Contract Documents.

**§ 3.6.5.2** The Architect may authorize minor changes in the Work that are consistent with the intent of the Contract Documents and do not involve an adjustment in the Contract Sum or an extension of the Contract Time. Such changes shall be effected by written order issued by the Architect through the Construction Manager.

**§ 3.6.5.3** The Architect shall maintain records relative to changes in the Work.

### § 3.6.6 Project Completion
**§ 3.6.6.1** The Architect, assisted by the Construction Manager, shall conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion prepared by the Construction Manager; receive from the Construction Manager and review written warranties and related documents required by the Contract Documents and assembled by the Contractor; and, after receipt of a final Contractor's Application and Certificate for Payment or a final Project Application and Project Certificate for Payment from the Construction Manager, issue a final Certificate for Payment based upon a final inspection indicating the Work complies with the requirements of the Contract Documents.

**§ 3.6.6.2** The Architect's inspections shall be conducted with the Owner and Construction Manager to check conformance of the Work with the requirements of the Contract Documents and to verify the accuracy and completeness of the list submitted by the Construction Manager and Contractor of Work to be completed or corrected.

**§ 3.6.6.3** When the Work is found to be substantially complete by the Construction Manager and Architect, and after certification by the Construction Manager and the Architect, the Architect shall inform the Owner about the balance of

Init.

/

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale
User Notes:                                                                                                    (1382829686)

**12**

the Contract Sum remaining to be paid the Contractor, including the amount to be retained from the Contract Sum, if any, for final completion or correction of the Work.

§ 3.6.6.4 Upon request of the Owner, and prior to the expiration of one year from the date of Substantial Completion, the Architect shall, without additional compensation, conduct a meeting with the Owner to review the facility operations and performance.

## ARTICLE 4  ADDITIONAL SERVICES

§ 4.1 Unless so designated in Section 4.2 as a Service requiring additional compensation, the Services listed below as the Architect's responsibility are included in the Architect's Basic Services compensation as provided in Section 11.1. *(Designate the Additional Services the Architect shall provide in the second column of the table below. In the third column indicate whether the service description is located in Section 4.2 or in an attached exhibit. If in an exhibit, identify the exhibit.)*

| Services | Responsibility (Architect, Owner or Not Provided) | Location of Service Description (Section 4.2 below or in an exhibit attached to this document and identified below) |
|---|---|---|
| § 4.1.1  Assistance with selection of the Construction Manager | Architect/Owner | Section 4.2.1 |
| § 4.1.2  Programming | Architect/Owner | Sections 1.1.1, 3.3 & 4.2.2 |
| *(Row deleted)* | | |
| § 4.1.3  Multiple preliminary designs | Architect | Sections 1.1.2, 3.3 & 4.2.2 |
| § 4.1.4  Measured drawings | Architect | Section 4.2.4 |
| § 4.1.5  Existing facilities surveys | Architect | Section 4.2.5 |
| § 4.1.5  Site evaluation and planning | Architect | Sections 1.1.2, 3.3, 4.2.6 |
| § 4.1.7  Building information modeling | Not Provided | |
| § 4.1.8  Civil engineering | Architect | Sections 1.1.10.5, 1.1.12.1.4 & 4.2.8 |
| *(Row deleted)* | | |
| § 4.1.9  Landscape design | Not Provided | |
| § 4.1.10  Architectural interior design | Architect | Section 4.2.10 |
| § 4.1.11  Value analysis | Architect/CM | Section 4.2.11 |
| § 4.1.12  Detailed cost estimating | CM | Section 4.2.12 |
| § 4.1.13  On-site project representation | Not Provided | Section 4.2.13 |
| § 4.1.14  Conformed construction documents | Not Provided | Section 4.2.14 |
| § 4.1.15  As-designed record drawings | Not Provided | Section 4.2.15 |
| § 4.1.16  As-constructed record drawings | Not Provided | Section4.2.16 |
| § 4.1.17  Post occupancy evaluation | Not Provided | |
| § 4.1.18  Facility support services | Not Provided | |
| § 4.1.19  Tenant-related services | Not Provided | |
| § 4.1.20  Coordination of Owner's consultants | Architect | Section 4.2.20 |
| § 4.1.21  Telecommunications/data design | Not Provided | Section 4.2.21 |
| § 4.1.22  Security evaluation and planning | Not Provided | |
| § 4.1.23  Commissioning | Architect | As required by energy code |
| *(Row deleted)* | | |
| § 4.1.24  Extensive environmentally responsible design | Not Provided | |
| § 4.1.25  LEED® certification (B214™–2012) | Not Provided | |
| § 4.1.26  Historic preservation (B205™–2007) | Not Provided | |
| § 4.1.27  Furniture, furnishings, and equipment design | Not Provided | |
| | | |

§ 4.2 Insert a description of each Additional Service designated in Section 4.1 as the Architect's responsibility, if not further described in an exhibit attached to this document.

4.2.1    Assistance with the selection of a **Construction Manager** shall be provided by the Architect as part of Basic Services

Init.

/

**AIA Document B132™ – 2009.** Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes:                                                                                          (1382829686)

**13**

**4.2.2** The **Programs** previously developed, as described in Section 1.1.1, will be updated as part of the *Schematic Design Phase Services* as described in Section 3.3.

**4.2.4** , The Architect will endeavor to field verify existing floor plan measurements where required by the Scope of the Project. These background drawings are not meant to be an exact record of existing as-built conditions.

**4.2.5** The Architect provided a thorough architectural and engineering evaluation of the existing Law Enforcement and Detention Center during development of the *Needs Assessment Study* phase, and will also utilize Owner's previously procured building studies.

**4.2.6** Updated **Site Evaluation and Planning** of Option 1B, will be provided by the Architect during the *Schematic* and *Design Development Phase Services*.

**4.2.8** **Civil Engineering** design included in the Architect's Basic Services shall include normal civil engineering design services for the selected Option 1B design, including demolition of the existing vacated South Jackson Street and relocation/re-use of all affected utilities, parking lot design, drives, sidewalks, site drainage, and on-site site utilities. Additional Civil Engineering design consulting for any off-site project infrastructure improvements as may be determined going forward by the City of Charles City or Floyd County shall be provided by the Architect on behalf of the Owner as an **Additional Service** with **additional compensation** as provided in Section 11.2.

**4.2.9** **Landscape planning, design and specification of plant materials** for the project shall be provided, if requested by the Owner, as an **Additional Service** with **additional compensation** as provided in Section 11.2.

**4.2.10** **Architectural Interior Design** included in the Architect's Basic Services shall consist of built-in cabinetry and casework, finishes, color selections and schedules for areas designed or specified by the Architect.

**4.2.11** **Value Analysis** is provided as part of the Architect's Basic Services (Section 3.3.5.2 and Article 6), in cooperation with the CM, in keeping the project within the Owner's budget. If requested by the Owner, Value Analysis to meet a **revised project scope or budget**, following completion of the Design Development phase and following the acceptance by the Owner of the CM's Design Development estimate of the Cost of the Work, shall be provided as an **Additional Service** with **additional compensation** as provided in Section 11.2.

**4.2.12** The Construction Manager (CM) shall provide **detailed cost estimates** based on progress Design Development and Construction Document drawings.

**4.2.13** If **full time representation at the site** by the Architect is required, the Architect shall provide one or more Project Representatives to assist in carrying out such additional on-site responsibilities as an **Additional Service** with **additional compensation** as provided in Section 11.2.

**4.2.14** **Conformed Construction Documents** are the Construction Documents modified to include any addenda issued by the Architect during the bidding or negotiation process. If requested by the Owner, Conformed Construction Documents shall be provided as an **Additional Service** with **additional compensation** as provided in Section 11.2.

**4.2.15** **As-Designed Record Drawings** are the record of everything the Architect designed for the Project, and include the original Construction Documents plus all addenda, Architect's Supplemental Instructions, Change Orders, Construction Change Directives and minor changes in the work. If requested by the Owner, As-Designed Record Drawings shall be provided as an **Additional Service** with **additional compensation** as provided in Section 11.2.

**4.2.16** **As-Constructed Record Drawings** (commonly called "As-builts") are the record of the Project as constructed, based on information the Construction Manager or Contractor provides to the Owner under the contract for construction. The Construction Manager or Contractor's marked-up construction site set of drawings shall be submitted to the Architect and forwarded to the Owner prior to final Application for Payment. Because the As-Constructed Record Drawings will be based on the Construction Manager or

Init.

/

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:** (1382829686)

14

Contractor's mark-ups, the Architect is not responsible for the accuracy or completeness of the As-Constructed Record Drawings. If requested by the Owner, **preparation of reproducible or electronic As-Constructed Record Drawings** by the Architect showing significant changes in the work made during construction based on marked-up prints, drawings and other data furnished by the Construction Manager or Contractor to the Architect shall be provided as an **Additional Service** with **additional compensation** as provided in Section 11.2.

**4.2.20**    The Architect will coordinate **Owner-supplied equipment** from the Owner's equipment vendors, such as laundry or kitchen equipment, with the Construction Documents based on timely delivery of equipment cut sheets and/or other relevant information from the Owner to the Architect.

**4.2.21**    Data and communications raceways, back-boxes, and associated data jacks will be drawn and specified as part of the Architect's Basic Services. **Telecommunications/Data *Design*** for telephones, computer networks, etc., shall be provided by the Owner's vendors and IT staff/consultants.

**4.2.27**    If requested by the Owner, selection, procurement or installation of **Furniture, Furnishings and related Equipment** shall be provided as an **Additional Service** with **additional compensation** as provided in Section 11.2. Coordination of other Owner-supplied equipment is described in Paragraph 4.2.20.

**§ 4.3** Additional Services may be provided after execution of this Agreement, without invalidating the Agreement. Except for services required due to the fault of the Architect, any Additional Services provided in accordance with this Section 4.3 shall entitle the Architect to compensation pursuant to Section 11.3 and an appropriate adjustment in the Architect's schedule.

**§ 4.3.1** Upon recognizing the need to perform the following Additional Services, the Architect shall notify the Owner with reasonable promptness and explain the facts and circumstances giving rise to the need. The Architect shall not proceed to provide the following services until the Architect receives the Owner's written authorization:

.1    Services necessitated by a change in the Initial Information, previous instructions or recommendations given by the Construction Manager or the Owner, or approvals given by the Owner, or a material change in the Project including, but not limited to, size, quality, complexity, building systems, the Owner's schedule or budget for Cost of the Work, constructability considerations, procurement or delivery method, or bid packages in addition to those listed in Section 1.1.6;

.2    Making revisions in Drawings, Specifications, or other documents (as required pursuant to Section 6.7), when such revisions are required because the Construction Manager's estimate of the Cost of the Work exceeds the Owner's budget, except where such excess is due to changes initiated by the Architect in scope, capacities of basic systems, or the kinds and quality of materials, finishes or equipment;

.3    Services necessitated by the Owner's request for extensive environmentally responsible design alternatives, such as unique system designs, in-depth material research, energy modeling, or LEED® certification;

.4    Changing or editing previously prepared Instruments of Service necessitated by the enactment or revision of codes, laws or regulations or official interpretations;

.5    Services necessitated by decisions of the Owner or Construction Manager not rendered in a timely manner or any other failure of performance on the part of the Owner, Construction Manager or the Owner's other consultants or contractors;

.6    Preparing digital data for transmission to the Owner's consultants and contractors, or to other Owner authorized recipients;

.7    Preparation of design and documentation for alternate bid or proposal requests proposed by the Owner or Construction Manager;

.8    Preparation for, and attendance at, a public presentation, meeting or hearing;

.9    Preparation for, and attendance at a dispute resolution proceeding or legal proceeding, except where the Architect is party thereto;

.10    Evaluation of the qualifications of sub-bidders or persons providing proposals;

.11    Consultation concerning replacement of Work resulting from fire or other cause during construction; or

.12    Assistance to the Initial Decision Maker, if other than the Architect.

**Init.**

/

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:**                                                                                                                              (1382829686)

**15**

**§ 4.3.2** Upon recognizing the need to perform the following Additional Services, the Architect shall notify the Owner with reasonable promptness, and explain the facts and circumstances giving rise to the need. The Architect shall not proceed to provide the following services until the Architect receives the Owner's written Authorization:

  .1 Reviewing a Contractor's submittal out of sequence from the initial Project submittal schedule agreed to by the Architect;
  .2 Responding to the Contractor's requests for information that are not prepared in accordance with the Contract Documents or where such information is available to the Contractor from a careful study and comparison of the Contract Documents, field conditions, other Owner-provided information, Contractor-prepared coordination drawings, or prior Project correspondence or documentation;
  .3 Preparing Change Orders, and Construction Change Directives that require evaluation of Contractor's proposals and supporting data, or the preparation or revision of Instruments of Service;
  .4 Evaluating an extensive number of Claims as the Initial Decision Maker;
  .5 Evaluating substitutions proposed by the Owner, Construction Manager or Contractor and making subsequent revisions to Instruments of Service resulting therefrom; or
  .6 To the extent the Architect's Basic Services are affected, providing Construction Phase Services 60 days after (1) the date of Substantial Completion of the Work or (2) the anticipated date of Substantial Completion, identified in Initial Information, whichever is earlier.

**§ 4.3.3** Upon recognizing the need to perform the following Additional Services, the Architect shall notify the Owner with reasonable promptness, and explain the facts and circumstances giving rise to the need. The Architect shall not proceed to provide the following services until the Architect receives the Owner's written Authorization:

  .1 More than Three (3) reviews of each Shop Drawing, Product Data item, sample and similar submittals of the Contractor
  .2 More than Thirty (30) visits to the site by the Architect over the duration of the Project during construction
  .3 More than Two (2) inspections for any portion of the Work to determine whether such portion of the Work is substantially complete in accordance with the requirements of the Contract Documents
  .4 More than Two (2) inspections for any portion of the Work to determine final completion

**§ 4.3.4** If the services covered by this Agreement have not been completed within Thirty ( 30 ) months of the date of this Agreement, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as Additional Services.

## ARTICLE 5 OWNER'S RESPONSIBILITIES

**§ 5.1** Unless otherwise provided for under this Agreement, the Owner shall provide information in a timely manner regarding requirements for and limitations on the Project, including a written program which shall set forth the Owner's objectives, schedule, constraints and criteria, including space requirements and relationships, flexibility, expandability, special equipment, systems and site requirements. Within 15 days after receipt of a written request from the Architect, the Owner shall furnish the requested information as necessary and relevant for the Architect to evaluate, give notice of or enforce lien rights.

**§ 5.2** The Owner shall retain a Construction Manager to provide services, duties and responsibilities as described in AIA Document C132–2009, Standard Form of Agreement Between Owner and Construction Manager. The Owner shall provide the Architect a copy of the executed agreement between the Owner and the Construction Manager, and any further modifications to the agreement.

**§ 5.3** The Owner shall furnish the services of a Construction Manager that shall be responsible for creating the overall Project schedule. The Owner shall adjust the Project schedule, if necessary, as the Project proceeds.

**§ 5.4** The Owner shall establish and periodically update the Owner's budget for the Project, including (1) the budget for the Cost of the Work as defined in Section 6.1, (2) the Owner's other costs, and (3) reasonable contingencies related to all of these costs. The Owner shall furnish the services of a Construction Manager that shall be responsible for preparing all estimates of the Cost of the Work. If the Owner significantly increases or decreases the Owner's budget for the Cost of the Work, the Owner shall notify the Architect and the Construction Manager. The Owner and the Architect, in consultation with the Construction Manager, shall thereafter agree to a corresponding change in the budget for the Cost of the Work or in the Project's scope and quality.

**Init.**

**/**

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:** (1382829686)

**16**

**§ 5.4.1** The Owner acknowledges that accelerated, phased or fast-track scheduling provides a benefit, but also carries with it associated risks. Such risks include the Owner incurring costs for the Architect to coordinate and redesign portions of the Project affected by procuring or installing elements of the Project prior to the completion of all relevant Construction Documents, and costs for the Contractor to remove and replace previously installed Work. If the Owner selects accelerated, phased or fast-track scheduling, the Owner agrees to include in the budget for the Project sufficient contingencies to cover such costs.

**§ 5.5** The Owner shall identify a representative authorized to act on the Owner's behalf with respect to the Project. The Owner shall render decisions and approve the Architect's submittals in a timely manner in order to avoid unreasonable delay in the orderly and sequential progress of the Architect's services.

**§ 5.6** The Owner shall furnish surveys to describe physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; designated wetlands; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data with respect to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark.

**§ 5.7** The Owner shall furnish services of geotechnical engineers, which may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, seismic evaluation, ground corrosion tests and resistivity tests, including necessary operations for anticipating subsoil conditions, with written reports and appropriate recommendations.

**§ 5.8** The Owner shall coordinate the services of its own consultants with those services provided by the Architect. Upon the Architect's request, the Owner shall furnish copies of the scope of services in the contracts between the Owner and the Owner's consultants. The Owner shall furnish the services of consultants other than those designated in this Agreement, or authorize the Architect to furnish them as an Additional Service, when the Architect requests such services and demonstrates that they are reasonably required by the scope of the Project. The Owner shall require that its consultants maintain professional liability insurance and other liability insurance as appropriate to the services provided.

**§ 5.9** The Owner shall furnish tests, inspections and reports required by law or the Contract Documents, such as structural, mechanical, and chemical tests, tests for air and water pollution, and tests for hazardous materials.

**§ 5.10** The Owner shall furnish all legal, insurance and accounting services, including auditing services, that may be reasonably necessary at any time for the Project to meet the Owner's needs and interests.

**§ 5.11** The Owner shall provide prompt written notice to the Architect and Construction Manager if the Owner becomes aware of any fault or defect in the Project, including errors, omissions or inconsistencies in the Architect's Instruments of Service.

**§ 5.12** Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner shall endeavor to communicate with the Contractor through the Construction Manager, and shall contemporaneously provide the same communications to the Architect about matters arising out of or relating to the Contract Documents. Communications by and with the Architect's consultants shall be through the Architect.

**§ 5.13** Before executing the Contract for Construction, the Owner shall coordinate the Architect's duties and responsibilities set forth in the Contract for Construction with the Architect's services set forth in this Agreement. The Owner shall provide the Architect a copy of the executed agreement between the Owner and Contractor, including the General Conditions of the Contract for Construction.

**§ 5.14** The Owner shall provide the Architect access to the Project site prior to commencement of the Work and shall obligate the Construction Manager and Contractor to provide the Architect access to the Work wherever it is in preparation or progress.

Init.

/

**AIA Document B132™ – 2009.** Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes:                                                                                    (1382829686)

17

## ARTICLE 6  COST OF THE WORK
§ 6.1 For purposes of this Agreement, the Cost of the Work shall be the total cost to the Owner to construct all elements of the Project designed or specified by the Architect and shall include the contractors' general conditions costs, overhead and profit. The Cost of the Work includes the compensation of the Construction Manager and Construction Manager's consultants during the Construction Phase only, including compensation for reimbursable expenses at the job site, if any. The Cost of the Work does not include the compensation of the Architect, the costs of the land, rights-of-way, financing, and contingencies for changes in the Work or other costs that are the responsibility of the Owner.

§ 6.2 The Owner's budget for the Cost of the Work is provided in Initial Information, and may be adjusted throughout the Project as required under Sections 5.4 and 6.4. Evaluations of the Owner's budget for the Cost of the Work represent the Architect's judgment as a design professional.

§ 6.3 The Owner shall require the Construction Manager to include appropriate contingencies for design, bidding or negotiating, price escalation, and market conditions in estimates of the Cost of the Work. The Architect shall be entitled to rely on the accuracy and completeness of estimates of the Cost of the Work the Construction Manager prepares as the Architect progresses with its Basic Services. The Architect shall prepare, as an Additional Service, revisions to the Drawings, Specifications or other documents required due to the Construction Manager's inaccuracies or incompleteness in preparing cost estimates. The Architect may review the Construction Manager's estimates solely for the Architect's guidance in completion of its services, however, the Architect shall report to the Owner any material inaccuracies and inconsistencies noted during any such review.

§ 6.3.1 Not Applicable

§ 6.4 If, prior to the conclusion of the Design Development Phase, the Construction Manager's estimate of the Cost of the Work exceeds the Owner's budget for the Cost of the Work, the Architect, in consultation with the Construction Manager, shall make appropriate recommendations to the Owner to adjust the Project's size, quality or budget, and the Owner shall cooperate with the Architect in making such adjustments.

§ 6.5 If the estimate of the Cost of the Work at the conclusion of the Design Development Phase exceeds the Owner's budget for the Cost of the Work, the Owner shall
    .1   give written approval of an increase in the budget for the Cost of the Work;
    .2   in consultation with the Architect and Construction Manager, revise the Project program, scope, or quality as required to reduce the Cost of the Work; or
    .3   implement any other mutually acceptable alternative.

§ 6.6 If the Owner chooses to proceed under Section 6.5.2, the Architect, without additional compensation, shall incorporate the required modifications in the Construction Documents Phase as necessary to comply with the Owner's budget for the Cost of the Work at the conclusion of the Design Development Phase Services, or the budget as adjusted under Section 6.5.1. The Architect's modification of the Construction Documents shall be the limit of the Architect's responsibility as a Basic Service under this Article 6.

§ 6.7 After incorporation of modifications under Section 6.6, the Architect shall, as an Additional Service, make any required revisions to the Drawings, Specifications or other documents necessitated by subsequent cost estimates that exceed the Owner's budget for the Cost of the Work, except when the excess is due to changes initiated by the Architect in scope, basic systems, or the kinds and quality of materials, finishes or equipment.

## ARTICLE 7  COPYRIGHTS AND LICENSES
§ 7.1 The Architect and the Owner warrant that in transmitting Instruments of Service, or any other information, the transmitting party is the copyright owner of such information or has permission from the copyright owner to transmit such information for its use on the Project. If the Owner and Architect intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions.

§ 7.2 The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and shall retain all common law, statutory and other reserved rights, including copyrights. Submission or distribution of Instruments of Service to meet official

**Init.**
**/**
AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:** (1382829686)  **18**

regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the reserved rights of the Architect and the Architect's consultants.

**§ 7.3** Upon execution of this Agreement, the Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service solely and exclusively for purposes of constructing, using, maintaining, altering, and adding to the Project, provided that the Owner substantially performs its obligations, including prompt payment of all sums when due, under this Agreement. The Architect shall obtain similar nonexclusive licenses from the Architect's consultants consistent with this Agreement. The license granted under this section permits the Owner to authorize the Contractor, Construction Manager, Subcontractors, Sub-subcontractors, and material or equipment suppliers, as well as the Owner's consultants and separate contractors, to reproduce applicable portions of the Instruments of Service solely and exclusively for use in performing services or construction for the Project. If the Architect rightfully terminates this Agreement for cause as provided in Section 9.4, the license granted in this Section 7.3 shall terminate.

**§ 7.3.1** In the event the Owner uses the Instruments of Service without retaining the authors of the Instruments of Service, the Owner releases the Architect and Architect's consultant(s) from all claims and causes of action arising from such uses. The Owner, to the extent permitted by law, further agrees to indemnify and hold harmless the Architect and its consultants from all costs and expenses, including the cost of defense, related to claims and causes of action asserted by any third person or entity to the extent such costs and expenses arise from the Owner's use of the Instruments of Service under this Section 7.3.1. The terms of this Section 7.3.1 shall not apply if the Owner rightfully terminates this Agreement for cause under Section 9.4.

**§ 7.4** Except for the licenses granted in this Article 7, no other license or right shall be deemed granted or implied under this Agreement. The Owner shall not assign, delegate, sublicense, pledge or otherwise transfer any license granted herein to another party without the prior written agreement of the Architect. Any unauthorized use of the Instruments of Service shall be at the Owner's sole risk and without liability to the Architect and the Architect's consultants.

## ARTICLE 8  CLAIMS AND DISPUTES
### § 8.1 General
**§ 8.1.1** The Owner and Architect shall commence all claims and causes of action, whether in contract, tort, or otherwise, against the other arising out of or related to this Agreement in accordance with the requirements of the method of binding dispute resolution selected in this Agreement within the period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work. The Owner and Architect waive all claims and causes of action not commenced in accordance with this Section 8.1.1.

**§ 8.1.2** To the extent damages are covered by property insurance, the Owner and Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, except such rights as they may have to the proceeds of such insurance as set forth in AIA Document A232–2009, General Conditions of the Contract for Construction. The Owner or the Architect, as appropriate, shall require the Construction Manager, contractors, consultants, agents and employees of any of them similar waivers in favor of the other parties enumerated herein.

**§ 8.1.3** The Architect shall indemnify and hold the Owner and the Owner's officers and employees harmless from and against damages, losses and judgments arising from claims by third parties, including reasonable attorneys' fees and expenses recoverable under applicable law, but only to the extent they are caused by the negligent acts or omissions of the Architect, its employees and its consultants in the performance of professional services under this Agreement. The Architect's duty to indemnify the Owner under this provision shall be limited to the available proceeds of insurance coverage.

**§ 8.1.4** The Architect and Owner waive consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement. This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination of this Agreement, except as specifically provided in Section 9.7.

### § 8.2 Mediation
**§ 8.2.1** Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to binding dispute resolution. If such matter relates to or is the subject of a lien

**AIA Document B132™ – 2009.** Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is** protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes:                                                                                                    (1382829686)

Init.

/

**19**

arising out of the Architect's services, the Architect may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the matter by mediation or by binding dispute resolution.

**§ 8.2.2** The Owner and Architect shall endeavor to resolve claims, disputes and other matters in question between them by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of a complaint or other appropriate demand for binding dispute resolution but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration proceeding is stayed pursuant to this section, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

**§ 8.2.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**§ 8.2.4** If the parties do not resolve a dispute through mediation pursuant to this Section 8.2, the method of binding dispute resolution shall be the following:
*(Check the appropriate box. If the Owner and Architect do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, the dispute will be resolved in a court of competent jurisdiction.)*

      [ ]    Arbitration pursuant to Section 8.3 of this Agreement

      [X]    Litigation in a court of competent jurisdiction

      [ ]    Other: *(Specify)*

**§ 8.3 Arbitration *(DELETED)***

*(Paragraphs deleted)*
**ARTICLE 9  TERMINATION OR SUSPENSION**
**§ 9.1** If the Owner fails to make payments to the Architect in accordance with this Agreement, such failure shall be considered substantial nonperformance and cause for termination or, at the Architect's option, cause for suspension of performance of services under this Agreement. If the Architect elects to suspend services, the Architect shall give seven days' written notice to the Owner before suspending services. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services. Before resuming services, the Architect shall be paid all sums due prior to suspension and any expenses incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.

**§ 9.2** If the Owner suspends the Project, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect shall be compensated for expenses incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.

**§ 9.3** If the Owner suspends the Project for more than 90 cumulative days for reasons other than the fault of the Architect, the Architect may terminate this Agreement by giving not less than seven days' written notice.

**§ 9.4** Either party may terminate this Agreement upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

**Init.**

**/**

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:**                                              (1382829686)

**20**

**§ 9.5** The Owner may terminate this Agreement upon not less than seven days' written notice to the Architect for the Owner's convenience and without cause.

**§ 9.6** In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses as defined in Section 9.7.

**§ 9.7** Termination Expenses are in addition to compensation for the Architect's services and include expenses directly attributable to termination for which the Architect is not otherwise compensated, plus an amount for the Architect's anticipated profit on the value of the services not performed by the Architect.

**§ 9.8** The Owner's rights to use the Architect's Instruments of Service in the event of a termination of this Agreement are set forth in Article 7 and Section 11.9.

**ARTICLE 10  MISCELLANEOUS PROVISIONS**
**§ 10.1** This Agreement shall be governed by the law of the place where the Project is located, except that if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 8.3.

**§ 10.2** Terms in this Agreement shall have the same meaning as those in AIA Document A232–2009, General Conditions of the Contract for Construction.

**§ 10.3** The Owner and Architect, respectively, bind themselves, their agents, successors, assigns and legal representatives to this Agreement. Neither the Owner nor the Architect shall assign this Agreement without the written consent of the other, except that the Owner may assign this Agreement to a lender providing financing for the Project if the lender agrees to assume the Owner's rights and obligations under this Agreement.

**§ 10.4** If the Owner requests the Architect to execute certificates, the proposed language of such certificates shall be submitted to the Architect for review at least 14 days prior to the requested dates of execution. If the Owner requests the Architect to execute consents reasonably required to facilitate assignment to a lender, the Architect shall execute all such consents that are consistent with this Agreement, provided the proposed consent is submitted to the Architect for review at least 14 days prior to execution. The Architect shall not be required to execute certificates or consents that would require knowledge, services or responsibilities beyond the scope of this Agreement.

**§ 10.5** Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

**§ 10.6** Unless otherwise required in this Agreement, the Architect shall have no responsibility for the discovery, presence, handling, removal or disposal of, or exposure of persons to, hazardous materials or toxic substances in any form at the Project site.

**§ 10.7** The Architect shall have the right to include photographic or artistic representations of the design of the Project among the Architect's promotional and professional materials. The Architect shall be given reasonable access to the completed Project to make such representations. However, the Architect's materials shall not include the Owner's confidential or proprietary information if the Owner has previously advised the Architect in writing of the specific information considered by the Owner to be confidential or proprietary. The Owner shall provide professional credit for the Architect in the Owner's promotional materials for the Project.

**§ 10.8** If the Architect or Owner receives information specifically designated by the other party as "confidential" or "business proprietary," the receiving party shall keep such information strictly confidential and shall not disclose it to any other person except to (1) its employees, (2) those who need to know the content of such information in order to perform services or construction solely and exclusively for the Project, or (3) its consultants and contractors whose contracts include similar restrictions on the use of confidential information.

**ARTICLE 11  COMPENSATION**
**§ 11.1** For the Architect's Basic Services described under Article 3, the Owner shall compensate the Architect as follows:

Init.

/

**AIA Document B132™ – 2009.** Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes:                                                                                                                          (1382829686)

21

*(Insert amount of, or basis for, compensation.)*

Compensation for the Architect's Basic services shall initially be **Ten Percent (10%)** of the Cost of the Work, as defined in Section 6.1.

**§ 11.2** For Additional Services designated in Section 4.1, the Owner shall compensate the Architect as follows:
*(Insert amount of, or basis for, compensation. If necessary, list specific services to which particular methods of compensation apply.)*

If requested by the Owner, Additional Services designated in Section 4.1 and **described in Section 4.2 as requiring additional compensation** shall be based upon the hourly billing rates set forth in Section 11.7, unless a stipulated sum has been agreed upon by the Owner.

**§ 11.3** For Additional Services that may arise during the course of the Project, including those under Section 4.3, the Owner shall compensate the Architect as follows:
*(Insert amount of, or basis for, compensation.)*

Compensation for any other Additional Services that may arise during the course of the Project shall be based upon the hourly billing rates set forth in Section 11.7, unless a stipulated sum has been agreed upon by the Owner.

**§ 11.4** Compensation for Additional Services of the Architect's consultants when not included in Sections 11.2 or 11.3, shall be the amount invoiced to the Architect plus NA percent ( NA %), or as otherwise stated below:

NA

**§ 11.5** Where compensation for Basic Services is based on a stipulated sum or percentage of the Cost of the Work, the compensation for each phase of services shall be as follows:

| | | | | |
|---|---|---|---|---|
| Schematic Design Phase | Fifteen | percent ( | 15 | %) |
| Design Development Phase | Twenty | percent ( | 20 | %) |
| Construction Documents Phase | Forty | percent ( | 40 | %) |
| Bidding or Negotiation Phase | Five | percent ( | 5 | %) |
| Construction Phase | Twenty | percent ( | 20 | %) |
| | | | | |
| Total Basic Compensation | one hundred | percent ( | 100 | %) |

The Owner acknowledges that with an accelerated Project delivery or multiple bid package process, the Architect may be providing its services in multiple Phases simultaneously. Therefore, the Architect shall be permitted to invoice monthly in proportion to services performed in each Phase of Services, as appropriate.

**§ 11.6** When compensation is based on a percentage of the Cost of the Work and any portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Section 11.5 based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent estimate of the Cost of the Work prepared by the Construction Manager for such portions of the Project. The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not the Construction Phase is commenced.

**§ 11.7** The hourly billing rates for services of the Architect and the Architect's consultants, if any, are set forth below. The rates shall be adjusted in accordance with the Architect's and Architect's consultants' normal review practices.
*(If applicable, attach an exhibit of hourly billing rates or insert them below.)*

| Employee or Category | Rate ($0.00) |
|---|---|
| Principal in Charge ....................................................... | $230.00 / Hour |

**Init.**

**/**

AIA Document B132™ – 2009. Copyright  1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:**                                                                                    (1382829686)

**22**

| | |
|---|---|
| Project Manager | $175.00 / Hour |
| Senior Designer | $170.00 / Hour |
| Mechanical Engineer | $170.00 / Hour |
| Electrical Engineer | $170.00 / Hour |
| Structural Engineer | $170.00 / Hour |
| Civil Engineer | $170.00 / Hour |
| Project Architect | $170.00 / Hour |
| Design Architect | $155.00 / Hour |
| Interior Architect | $145.00 / Hour |
| Technician | $85.00 / Hour |
| Administrative | $65.00 / Hour |

### § 11.8 Compensation for Reimbursable Expenses

§ 11.8.1 Reimbursable Expenses are in addition to compensation for Basic and Additional Services and include expenses incurred by the Architect and the Architect's consultants directly related to the Project, as follows:

.1 Transportation and authorized out-of-town travel and subsistence;

.2 Long distance services, dedicated data and communication services, teleconferences, Project Web sites, and extranets;

.3 Fees paid for securing approval of authorities having jurisdiction over the Project;

.4 Printing, reproductions, plots, standard form documents;

.5 Postage, handling and delivery;

.6 Expense of overtime work requiring higher than regular rates, if authorized in advance by the Owner;

.7 Renderings, models, mock-ups, professional photography, and presentation materials requested by the Owner;

.8 Not Applicable

.9 All taxes levied on professional services and on reimbursable expenses;

.10 Site office expenses; and

.11 Other similar Project-related expenditures.

§ 11.8.2 For Reimbursable Expenses the compensation shall be the expenses incurred by the Architect plus Ten percent (10 %) of the expenses incurred.

§ 11.8.3 If the insurance requirements listed in Section 2.6 exceed the types and limits the Architect normally maintains and the Architect incurred additional costs to satisfy such requirements, the Owner shall reimburse the Architect for such costs as set forth below.

The Architect shall be reimbursed by the Owner for the cost difference between the insurance requirements listed in Section 2.6 and the costs of any additional Owner required insurance types and limits, as quoted by the Architect's insurance carrier.

### § 11.9 Compensation for Use of Architect's Instruments of Service

If the Owner terminates the Architect for its convenience under Section 9.5, or the Architect terminates this Agreement under Section 9.3, the Owner shall pay a licensing fee as compensation for the Owner's continued use of the Architect's Instruments of Service solely for purposes of completing, using and maintaining the Project as follows:

A licensing fee shall be negotiated as part of the Termination Expenses set forth in Section 9.7.

### § 11.10 Payments to the Architect

§ 11.10.1 An initial payment of none required ($ 0) shall be made upon execution of this Agreement and is the minimum payment under this Agreement. It shall be credited to the Owner's account in the final invoice.

§ 11.10.2 Unless otherwise agreed, payments for services shall be made monthly in proportion to services performed. Payments are due and payable upon presentation of the Architect's invoice. Amounts unpaid Thirty (30 ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.
*(Insert rate of monthly or annual interest agreed upon.)*

Init.

/

**AIA Document B132™ – 2009.** Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes: (1382829686)

23

Eighteen percent (18) % per annum

**§ 11.10.3** The Owner shall not withhold amounts from the Architect's compensation to impose a penalty or liquidated damages on the Architect, or to offset sums requested by or paid to contractors for the cost of changes in the Work unless the Architect agrees or has been found liable for the amounts in a binding dispute resolution proceeding.

**§ 11.10.4** Records of Reimbursable Expenses, expenses pertaining to Additional Services, and services performed on the basis of hourly rates shall be available to the Owner at mutually convenient times.

## ARTICLE 12  SPECIAL TERMS AND CONDITIONS
Special terms and conditions that modify this Agreement are as follows:

2.1       The Architect will exercise its best professional effort to interpret the Americans with Disabilities Act (ADA) Standards for Accessible Design and other applicable state, local and Federal requirements.  The Architect cannot and does not guarantee that its interpretation of the ADA legislation will be the same as other interpretations and therefore cannot guarantee the building's or project's compliance with the law.  The scope of services provided by the Architect is limited to the requirements of Titles II and III of the ADA.  The Architect cannot provide recommendations or advice concerning which ADA requirements or measures may be "readily achievable" nor can the Architect determine the priorities or phasing of selected measures.

**12.2** The Architect accepts no liability for any plans or specifications produced under this agreement until such drawings are stamped as approved by all relevant building department officials.

**12.3** The Architect acknowledges the importance to the Owner of the Owner's project schedule and agrees to put forth its best professional efforts to perform its services under this Agreement in a manner consistent with that schedule.  The Owner understands, however, that the Architect's performance must be governed by sound architectural practices.

**12.4** The Architect will not stamp drawings produced for any phase of this project under the terms of this agreement until all invoices billed up to that point in the project have been paid in full.

**12.5** The Owner confirms that neither the Architect nor any of the Architect's subconsultants or subcontractors has offered any fiduciary service to the Owner and no fiduciary responsibility shall be owed to the Owner by the Architect or any of the Architect's subconsultants or subcontractors, as a consequence of the Architect's entering into this Agreement with the Owner.

## ARTICLE 13  SCOPE OF THE AGREEMENT
**§ 13.1** This Agreement represents the entire and integrated agreement between the Owner and the Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

**§ 13.2** This Agreement is comprised of the following documents listed below:
.1      AIA Document B132™–2009, Standard Form Agreement Between Owner and Architect, Construction Manager as Adviser Edition
.2      AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed, or the following:

Not Applicable

.3      AIA Document E202™–2008, Building Information Modeling Protocol Exhibit, if completed, or the following:

Not Applicable

.4      Other documents:
        *(List other documents, if any, including additional scopes of service forming part of the Agreement.)*

**Init.**

**/**

AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:**                                                                                                            (1382829686)

**24**

None

This Agreement is entered into as of the day and year first written above.

OWNER *(Signature)*                              ARCHITECT *(Signature)*

Linda Tjaden, Chair                              Donald F. Prochaska, AIA, NCARB, President
**Floyd County Board of Supervisors**            Prochaska & Associates
*(Printed name and title)*                       *(Printed name and title)*

**Init.**

/

**AIA Document B132™ – 2009.** Copyright  1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:17:15 on 06/06/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:**                                                                                (1364154732)

**25**

# Additions and Deletions Report for
## AIA® Document B132™ – 2009

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 11:29:51 on 06/07/2018.

**PAGE 1**

**AGREEMENT** made as of the Sixth day of June in the year 2018

...

Floyd County Board of Supervisors
101 S. Main St.
Suite 304
Charles City, IA 50616

...

Prochaska & Associates
11317 Chicago Circle
Omaha, NE 68154-2633

...

Floyd County Law Enforcement Center
Architectural Services for the construction of the Floyd County Law Enforcement Center in Charles City, IA
See further description in Article 1 Initial Information

...

Unknown at time of execution

...

With assistance from the Architect, the Owner will develop the Request for Proposals to retain the services of a Construction Manager as Advisor (CMA) for the Project.
**PAGE 2**

The Program for the Floyd County Law Enforcement Center was first developed as part of the April 13, 2017 *Part 1 Needs Assessments Study,* and then updated as part of the November 10, 2017 *Part 2, Facility Development* document, both prepared by Prochaska & Associates, , and is itemized in Section 2, beginning on page 2.1. It is intended that, working with representatives of Floyd County, the Program will be finalized as part of this Agreement's *Schematic Design Phase.*

...

Four Planning Options were developed as part of the 2017 *Part 2, Facility Development* document, and based on Options 1, 2 & 4, construction of a new Justice Center on acquired residential properties West of vacated South Jackson Street right-of way, as well as the West side of the existing Courthouse property was pursued. Option 3

Additions and Deletions Report for AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes: (1382829686)

1

considered closing the current jail, creating an IDOC-compliant Holding facility, and transporting all inmates to other out-of-county jails. Based upon direction from the County Board of Supervisors and Sheriff, the decision was made to implement the design for Option 1B, as described in the referenced *Facility Development* document, and as revised by more recent Bond promotion presentation materials, dated February 19th, 2018. The final design is for a 32,346 gross square foot (GSF) 32-bed Jail and Jail support space, Sheriff's Department, and a shared Training/Multi-purpose Room. The Law Enforcement Center site will be master planned to permit expansion in the future if necessary. The *Part 2 Facility Development* document also developed options for reuse of the vacated spaces in the existing Courthouse, consisting of relocation of several other county departments. Renovated areas in the existing Courthouse totaled 14,125 GSF, per the latest February 19th, 2018 documents. As agreed to by the Floyd County **Board of Supervisors, the** new addition will abut the west side of the existing Courthouse building with a multi-story atrium containing new elevators, stairs, and ADA accessible Toilet Rooms.

The existing Courthouse will be served with a new mechanical plant contained in the Justice Center Addition, and all exterior Courthouse windows will also be replaced with energy efficient units. Energy Management Improvement (EMI) issues listed by previous studies conducted by Floyd County, and communicated to Prochaska & Associates will be implemented, or alternatives deemed to be mutually acceptable to all parties to this Agreement.

Facility vehicle parking will consist of 19 new on-site stalls and 24 proposed diagonal right-of-way stalls on Court Street, in addition to the existing 52 stalls in the lot north of Court Street. Prochaska & Associates will negotiate with the City of Charles City Planning Department to gain permission for the Court Street right-of-way stalls.

The Justice Center Addition will also comply with a Board of Supervisors requirement that the Main Floor level be set at 1 foot above the formal 500-year flood elevation.

Because the Courthouse building is listed on the National Historic Register of Historic Places (NRHP), Prochaska & Associates will also interact and negotiate with the National Park Service for a final design solution acceptable to all parties, and based upon the above descriptive parameters, Work described by the reference document "Report of Site Visit" (September 3, 2009, and prepared by Douglas J. Steinmetz, Architect, will form the basis for discussions.

**PAGE 3**

A Bond value of $13,500,000.00, containing an estimated construction budget of $10,898,700.00, was passed by the voters of Floyd County on May 1st, 2018. Together with assistance from the Construction Manager (Advisor), Prochaska & Associates will complete design of the project as described above, and documented by the *Part 2, Facility Development*, not to exceed the Construction budget figure. Miscellaneous budget costs ("Soft Costs") include several items estimated at this time with benefit of all known and provided information, but possess a measure of uncertainty.

...

The Schematic Design phase will commence immediately, with an anticipated Bid Date targeted for April of 2019. A preliminary draft Schedule will be developed immediately with additional milestone intermediate dates acceptable to all parties.

...

A Construction date of Commencement is not known with certainty at this time, but is targeted for May of 2019.

...

Unknown at time of execution of this Agreement, but will be established with greater certainty with assistance from Owner's selected Construction Manager prior to the Project Bid Date.

...

Additions and Deletions Report for AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale. User Notes: (1382829686)

2

None

**PAGE 4**

[ X ]     Unknown at time of execution

...

Unknown at time of execution of this Agreement, but if desired by the Owner, will be determined during the Architect's Basic Services Phases, and with input provided by the Owner and Owner's selected Construction Manager.

...

None

...

*(List name, address and other information.)*

Linda Tjaden, Board of Supervisors, Floyd County Jail Committee Chair
101 S. Main St.
Suite 304
Charles City, IA 50616

...

Linda Tjaden – Chair of Floyd County Board of Supervisors
Mark Kuhn - Vice Chair of Floyd County Board of Supervisors
Jeff Crooks – Floyd County Sheriff
Iowa State Fire Marshal's Office
Iowa Jail Standards

...

Unknown at time of execution of this Agreement.  Pending the Owner's approval, the Construction Manager selection process may begin during the Schematic Design or Design Development Phases, in order for the Construction Manager to assist with development of an accurate Project Budget.

...

Not Applicable (NA)

**PAGE 5**

Unknown at time of execution of this Agreement, but anticipated to be selected by the Owner with assistance from the Architect as early as possible during the Schematic Design phase.

...

Unknown at time of execution of this Agreement, but anticipated to be selected by the Owner with assistance from the Architect as early as possible during the Schematic Design phase.

...

Unknown at time of execution of this Agreement.
On behalf of the Owner, the Architect may retain an outside Civil Engineering consultant under Basic Services.

Additions and Deletions Report for AIA Document B132™ – 2009. Copyright  1992 and 2009 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes:                                                                                                              (1382829686)

**3**

...

<u>Unknown at time of execution of this Agreement.</u>

...

<u>Donald Prochaska, President/Architect/Project Principal</u>
<u>Jim Classe, AIA, Vice President of Design, Design Architect</u>
<u>Curtis Field, AIA, Project Manager</u>
<u>William Huey, Vice President, Architect, Construction Administrator</u>
<u>Prochaska & Associates</u>
<u>11317 Chicago Circle</u>
<u>Omaha, Nebraska 68154-2633</u>

...

<u>Not Applicable-in house Structural Staff</u>

**PAGE 6**

<u>Not Applicable-in-house Mechanical Staff</u>

...

<u>Not Applicable- in-house Electrical Staff</u>

.4    <u>Civil Engineering:</u>

<u>Per Section 1.1.10.5, the Architect may elect to retain, on behalf of the Owner, additional Civil</u>
<u>Engineering consultants to supplement the Architect's in-house Civil staff.</u>

...

<u>Not Applicable</u>

...

<u>None</u>
**PAGE 7**

**§ 2.6.1** Comprehensive General Liability with policy limits of not less than ($—) <u>Two Million Dollars</u>
<u>($2,000,000.00)</u> for each occurrence and in the aggregate for bodily injury and property damage.

**§ 2.6.2** Automobile Liability covering owned and rented vehicles operated by the Architect with policy limits of not
less than <u>One Million Dollars</u> ($ <u>1,000,000.00</u> ) combined single limit and aggregate for bodily injury and property
damage.

...

**§ 2.6.4** Workers' Compensation at statutory limits and Employers Liability with a policy limit of not less than ($
).<u>Five Hundred Thousand Dollars ($ 500,000.00 per accident, $500,000 per disease and $500,000 policy limit on</u>
<u>disease.</u>

Additions and Deletions Report for AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. All rights reserved.
WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®
Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.
This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes:                                                                                              (1382829686)

4

**§ 2.6.5** Professional Liability covering the Architect's negligent acts, errors and omissions in its performance of professional services with policy limits of not less than One Million Dollars ($ 1,000,000.00 ) per claim and in the ~~aggregate.~~aggregate Two Million Dollars ($2,000,000).
**PAGE 8**

*(It is anticipated that retention of the Construction Manager will not be completed until near the end of the Schematic Design Phase, or beginning of the Design Development Phase.).*
**§ 3.2.1** The Architect shall review the program ~~and other information furnished by the Owner and Construction Manager,~~ previously completed and revised during the *Parts 1 and 2 Needs Assessment and Facility Development* phases, and other information furnished by the Owner, and shall review laws, codes, and regulations applicable to the Architect's services.

**§ 3.2.2** The Architect shall prepare a preliminary evaluation of the Owner's program, schedule, budget for the Cost of the Work, Project site, and the proposed procurement or delivery method and other Initial Information, each in terms of the other, to ascertain the requirements of the Project. The Architect shall notify the Owner of (1) any inconsistencies discovered in the information, and (2) other information or consulting services that may be reasonably needed for the Project. *(Most of these items were completed under the previous Parts 1 and 2 Needs Assessment and Facility Development phases).*

**§ 3.2.3** The Architect shall present its preliminary evaluation to the Owner and ~~Construction Manager and~~ shall discuss with the Owner ~~and Construction Manager~~ alternative approaches to design and construction of the Project, including the feasibility of incorporating environmentally responsible design approaches. The Architect shall reach an understanding with the Owner regarding the requirements of the Project.

**§ 3.2.4** Based on the Project requirements agreed upon with the Owner, the Architect shall prepare and present to the ~~Owner and Construction Manager,~~ Owner, for the Owner's approval, a preliminary design illustrating the scale and relationship of the Project components.

**§ 3.2.5** Based on the Owner's approval of the preliminary design, the Architect shall prepare Schematic Design Documents for the Owner's ~~approval and the Construction Manager's review.~~ approval. The Schematic Design Documents shall consist of drawings and other documents including a site plan, if appropriate, and preliminary building plans, sections and elevations; and may include some combination of study models, perspective sketches, or digital modeling. Preliminary selections of major building systems and construction materials shall be noted on the drawings or described in writing.

...

**§ 3.2.5.2** The Architect shall consider with the Owner ~~and the Construction Manager~~ the value of alternative materials, building systems and equipment, together with other considerations based on program and aesthetics in developing a design for the Project that is consistent with the Owner's schedule and budget for the Cost of the Work.

**§ 3.2.6** The Architect shall submit the Schematic Design Documents to the Owner ~~and the Construction Manager. The Architect shall meet with the Construction Manager to review the Schematic Design Documents.~~ (and to Construction Managers during the RFP process, when requested).

**§ 3.2.7** ~~Upon~~ After retention of the Construction Manager, and upon receipt of the Construction Manager's review comments and cost estimate at the conclusion of the Schematic Design ~~Phase,~~ Phase (if the CMA has been retained at this point), the Architect shall take action as required under Section 6.4, identify agreed upon adjustments to the Project's size, quality or budget, and request the Owner's approval of the Schematic Design Documents. If a CMA has not yet been retained, the Architect will provide Cost Estimate updates as necessary. If revisions to the Schematic Design Documents are required to comply with the Owner's budget for the Cost of the Work at the conclusion of the Schematic Design Phase, the Architect shall incorporate the required revisions in the Design Development Phase.
**PAGE 9**

The Architect shall assist the Owner and Construction Manager in establishing a list of prospective contractors. Following the Owner's approval of the Construction Documents, the Architect shall assist the Owner and Construction Manager in (1) obtaining ~~either competitive bids or negotiated proposals;~~ competitive bids; (2)

**Additions and Deletions Report for AIA Document B132™ – 2009.** Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:** (1382829686)

5

confirming responsiveness of bids or proposals; (3) determining the successful bid or proposal, if any; and (4) awarding and preparing contracts for construction.

**PAGE 10**

**§ 3.5.3 ~~Negotiated Proposals~~**

~~§ 3.5.3.1 Proposal Documents shall consist of proposal requirements, and proposed Contract Documents.~~

~~§ 3.5.3.2 The Architect shall assist the Owner and Construction Manager in obtaining proposals by~~
> ~~.1     facilitating the reproduction of Proposal Documents for distribution to prospective contractors, and requesting their return upon completion of the negotiation process;~~
> ~~.2     participating in selection interviews with prospective contractors; and~~
> ~~.3     participating in negotiations with prospective contractors.~~

~~§ 3.5.3.3 The Architect shall consider requests for substitutions, if the Proposal Documents permit substitutions, and shall consult with the Construction Manager and prepare and distribute addenda identifying approved substitutions to all prospective contractors.~~

**PAGE 11**

> .2     Where there are Multiple Prime Contractors responsible for performing different portions of the Project, the Architect shall review a Project Application and Project Certificate for Payment, with a Summary of Contractors' Applications for ~~Payment,~~ Payment that the Construction Manager has previously prepared, reviewed and certified. The Architect shall certify the amounts due the Contractors and shall issue a Project Certificate for Payment in the total of such amounts.

**PAGE 13**

**§ 4.1** ~~Additional Services listed below are not included in Basic Services but may be required for the Project. The Architect shall provide the listed Additional Services only if specifically designated in the table below as the Architect's responsibility, and the Owner shall compensate the Architect as provided in Section 11.2.~~ Unless so designated in Section 4.2 as a Service requiring additional compensation, the Services listed below as the Architect's responsibility are included in the Architect's Basic Services compensation as provided in Section 11.1.

...

| § 4.1.1   Assistance with selection of the Construction Manager | Architect/Owner | Section 4.2.1 |
|---|---|---|
| § 4.1.2   Programming | Architect/Owner | Sections 1.1.1, 3.3 & 4.2.2 |
| ~~§ 4.1.1   Programming (B202™ 2009)~~ | | |
| ~~§ 4.1.2~~  § 4.1.3   Multiple preliminary designs | Architect | Sections 1.1.2, 3.3 & 4.2.2 |
| ~~§ 4.1.3~~  § 4.1.4   Measured drawings | Architect | Section 4.2.4 |
| ~~§ 4.1.4~~  § 4.1.5   Existing facilities surveys | Architect | Section 4.2.5 |
| ~~§ 4.1.5~~   Site evaluation and planning~~(B203™ 2007)~~ | Architect | Sections 1.1.2, 3.3, 4.2.6 |
| ~~§ 4.1.6~~  § 4.1.7   Building information modeling~~(E202™ 2008)~~ | Not Provided | |
| § 4.1.8   Civil engineering | Architect | Sections 1.1.10.5, 1.1.12.1.4 & 4.2.8 |
| ~~§ 4.1.7   Civil engineering~~ | | |
| ~~§ 4.1.8~~  § 4.1.9   Landscape design | Not Provided | |
| ~~§ 4.1.9~~  § 4.1.10   Architectural interior design~~(B252™ 2007)~~ | Architect | Section 4.2.10 |
| ~~§ 4.1.10~~  § 4.1.11   Value analysis~~(B204™ 2007)~~ | Architect/CM | Section 4.2.11 |
| ~~§ 4.1.11~~  § 4.1.12   Detailed cost estimating | CM | Section 4.2.12 |
| ~~§ 4.1.12~~  § 4.1.13   On-site project representation~~(B207™ 2008)~~ | Not Provided | Section 4.2.13 |
| ~~§ 4.1.13~~  § 4.1.14   Conformed construction documents | Not Provided | Section 4.2.14 |
| ~~§ 4.1.14~~  § 4.1.15   As-designed record drawings | Not Provided | Section 4.2.15 |
| ~~§ 4.1.15~~  § 4.1.16   As-constructed record drawings | Not Provided | Section 4.2.16 |

**Additions and Deletions Report for AIA Document B132™ – 2009.** Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved.**
**WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.** Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes:                                                                                                              (1382829686)

6

| §4.1.16 §4.1.17 Post occupancy evaluation | Not Provided | |
|---|---|---|
| §4.1.17 §4.1.18 Facility support services(B210™ 2007) | Not Provided | |
| §4.1.18 §4.1.19 Tenant-related services | Not Provided | |
| §4.1.19 §4.1.20 Coordination of Owner's consultants | Architect | Section 4.2.20 |
| §4.1.20 §4.1.21 Telecommunications/data design | Not Provided | Section 4.2.21 |
| §4.1.21 §4.1.22 Security evaluation and planning(B206™ 2007) | Not Provided | |
| §4.1.23 Commissioning | Architect | As required by energy code |
| §4.1.22 Commissioning (B211™ 2007) | | |
| §4.1.23 §4.1.24 Extensive environmentally responsible design | Not Provided | |
| §4.1.24 §4.1.25 LEED® certification (B214™ 2012) | Not Provided | |
| §4.1.25 §4.1.26 Historic preservation (B205™ 2007) | Not Provided | |
| §4.1.26 §4.1.27 Furniture, furnishings, and equipment design(B253™ 2007) | Not Provided | |

...

**4.2.1** Assistance with the selection of a **Construction Manager** shall be provided by the Architect as part of Basic Services

**4.2.2** The **Programs** previously developed, as described in Section 1.1.1, will be updated as part of the *Schematic Design Phase Services* as described in Section 3.3.

**4.2.4** , The Architect will endeavor to field verify existing floor plan measurements where required by the Scope of the Project. These background drawings are not meant to be an exact record of existing as-built conditions.

**4.2.5** The Architect provided a thorough architectural and engineering evaluation of the existing Law Enforcement and Detention Center during development of the *Needs Assessment Study* phase, and will also utilize Owner's previously procured building studies.

**4.2.6** Updated **Site Evaluation and Planning** of Option 1B, will be provided by the Architect during the *Schematic* and *Design Development Phase Services*.

**4.2.8** **Civil Engineering** design included in the Architect's Basic Services shall include normal civil engineering design services for the selected Option 1B design, including demolition of the existing vacated South Jackson Street and relocation/re-use of all affected utilities, parking lot design, drives, sidewalks, site drainage, and on-site utilities. Additional Civil Engineering design consulting for any off-site project infrastructure improvements as may be determined going forward by the City of Charles City or Floyd County shall be provided by the Architect on behalf of the Owner as an **Additional Service** with **additional compensation** as provided in Section 11.2.

**4.2.9** **Landscape planning, design and specification of plant materials** for the project shall be provided, if requested by the Owner, as an **Additional Service** with **additional compensation** as provided in Section 11.2.

**4.2.10** **Architectural Interior Design** included in the Architect's Basic Services shall consist of built-in cabinetry and casework, finishes, color selections and schedules for areas designed or specified by the Architect.

**4.2.11** **Value Analysis** is provided as part of the Architect's Basic Services (Section 3.3.5.2 and Article 6), in cooperation with the CM, in keeping the project within the Owner's budget. If requested by the Owner, Value Analysis to meet a **revised project scope or budget**, following completion of the Design Development phase and following the acceptance by the Owner of the CM's Design Development estimate of the Cost of the Work, shall be provided as an **Additional Service** with **additional compensation** as provided in Section 11.2.

**4.2.12** The Construction Manager (CM) shall provide **detailed cost estimates** based on progress Design Development and Construction Document drawings.

Additions and Deletions Report for AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes: (1382829686)

7

4.2.13    If **full time representation at the site** by the Architect is required, the Architect shall provide one or more Project Representatives to assist in carrying out such additional on-site responsibilities as an **Additional Service** with **additional compensation** as provided in Section 11.2.

4.2.14    **Conformed Construction Documents** are the Construction Documents modified to include any addenda issued by the Architect during the bidding or negotiation process. If requested by the Owner, Conformed Construction Documents shall be provided as an **Additional Service** with **additional compensation** as provided in Section 11.2.

4.2.15    **As-Designed Record Drawings** are the record of everything the Architect designed for the Project, and include the original Construction Documents plus all addenda, Architect's Supplemental Instructions, Change Orders, Construction Change Directives and minor changes in the work. If requested by the Owner, As-Designed Record Drawings shall be provided as an **Additional Service** with **additional compensation** as provided in Section 11.2.

4.2.16    **As-Constructed Record Drawings** (commonly called "As-builts") are the record of the Project as constructed, based on information the Construction Manager or Contractor provides to the Owner under the contract for construction. The Construction Manager or Contractor's marked-up construction site set of drawings shall be submitted to the Architect and forwarded to the Owner prior to final Application for Payment. Because the As-Constructed Record Drawings will be based on the Construction Manager or Contractor's mark-ups, the Architect is not responsible for the accuracy or completeness of the As-Constructed Record Drawings. If requested by the Owner, **preparation of reproducible or electronic As-Constructed Record Drawings** by the Architect showing significant changes in the work made during construction based on marked-up prints, drawings and other data furnished by the Construction Manager or Contractor to the Architect shall be provided as an **Additional Service** with **additional compensation** as provided in Section 11.2.

4.2.20    The Architect will coordinate **Owner-supplied equipment** from the Owner's equipment vendors, such as laundry or kitchen equipment, with the Construction Documents based on timely delivery of equipment cut sheets and/or other relevant information from the Owner to the Architect.

4.2.21    Data and communications raceways, back-boxes, and associated data jacks will be drawn and specified as part of the Architect's Basic Services. **Telecommunications/Data** *Design* for telephones, computer networks, etc., shall be provided by the Owner's vendors and IT staff/consultants.

4.2.27    If requested by the Owner, selection, procurement or installation of **Furniture, Furnishings and related Equipment** shall be provided as an **Additional Service** with **additional compensation** as provided in Section 11.2.  Coordination of other Owner-supplied equipment is described in Paragraph 4.2.20.
**PAGE 15**

.10    Evaluation of the qualifications of ~~bidders~~ sub-bidders or persons providing proposals;
**PAGE 16**

§ 4.3.2 ~~To avoid delay in the Construction Phase, the Architect shall provide the following Additional Services,~~ Upon recognizing the need to perform the following Additional Services, the Architect shall notify the Owner with reasonable promptness, and explain the facts and circumstances giving rise to the need. ~~If the Owner subsequently determines that all or parts of those services are not required, the Owner shall give prompt written notice to the Architect, and the Owner shall have no further obligation to compensate the Architect for those services.~~ The Architect shall not proceed to provide the following services until the Architect receives the Owner's written Authorization:

...

§ 4.3.3 ~~The Architect shall provide Construction Phase Services exceeding the limits set forth below as Additional Services. When the limits below are reached, the Architect shall notify the Owner:~~ Upon recognizing the need to perform the following Additional Services, the Architect shall notify the Owner with reasonable promptness, and

**Additions and Deletions Report for AIA Document B132™ – 2009.** Copyright  1992 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes:                                                                                                                          (1382829686)

8

explain the facts and circumstances giving rise to the need. The Architect shall not proceed to provide the following services until the Architect receives the Owner's written Authorization:

.1 (——)More than Three (3) reviews of each Shop Drawing, Product Data item, sample and similar submittals of the Contractor

.2 (——)More than Thirty (30) visits to the site by the Architect over the duration of the Project during construction

.3 (——)More than Two (2) inspections for any portion of the Work to determine whether such portion of the Work is substantially complete in accordance with the requirements of the Contract Documents

.4 (——)More than Two (2) inspections for any portion of the Work to determine final completion

**§ 4.3.4** If the services covered by this Agreement have not been completed within Thirty ( 30 ) months of the date of this Agreement, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as Additional Services.
**PAGE 18**

**§ 6.1** For purposes of this Agreement, the Cost of the Work shall be the total cost to the Owner to construct all elements of the Project designed or specified by the Architect and shall include the contractors' general conditions costs, overhead and profit. The Cost of the Work includes the compensation of the Construction Manager and Construction Manager's consultants during the Construction Phase only, including compensation for reimbursable expenses at the job site, if any. The Cost of the Work does not include the compensation of the Architect, the costs of the land, rights-of-way, financing, and contingencies for changes in the Work or other costs that are the responsibility of the Owner.

...

**§ 6.3.1** ~~If the Architect is providing detailed cost estimating services as an Additional Service, and a discrepancy exists between the Construction Manager's cost estimates and the Architect's cost estimates, the Architect and the Construction Manager shall work cooperatively to conform the cost estimates to one another.~~ Not Applicable
**PAGE 19**

**§ 7.3** Upon execution of this Agreement, the Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service solely and exclusively for purposes of constructing, using, maintaining, ~~altering~~ altering.
**PAGE 20**

[——] **[X]** Litigation in a court of competent jurisdiction

...

**§ 8.3 Arbitration** *(DELETED)*
**§ 8.3.1** ~~If the parties have selected arbitration as the method for binding dispute resolution in this Agreement any claim, dispute or other matter in question arising out of or related to this Agreement subject to, but not resolved by, mediation shall be subject to arbitration which shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement, unless the parties mutually agree otherwise. A demand for arbitration shall be made in writing, delivered to the other party to this Agreement, and filed with the person or entity administering the arbitration.~~

**§ 8.3.1.1** ~~A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the claim, dispute or other matter in question would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.~~

**§ 8.3.2** ~~The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.~~

**Additions and Deletions Report for AIA Document B132™ – 2009.** Copyright © 1992 and 2009 by The American Institute of Architects. **All rights reserved.**
WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:** (1382829686)

9

~~§ 8.3.3 The award rendered by the arbitrator(s) shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.~~

~~§ 8.3.4 Consolidation or Joinder~~
~~§ 8.3.4.1 Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common issues of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).~~

~~§ 8.3.4.2 Either party, at its sole discretion, may include by joinder persons or entities substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.~~

~~§ 8.3.4.3 The Owner and Architect grant to any person or entity made a party to an arbitration conducted under this Section 8.3, whether by joinder or consolidation, the same rights of joinder and consolidation as the Owner and Architect under this Agreement.~~

### PAGE 22

Compensation for the Architect's Basic services shall initially be **Ten Percent (10%)** of the Cost of the Work, as defined in Section 6.1.

...

If requested by the Owner, Additional Services designated in Section 4.1 and **described in Section 4.2 as requiring additional compensation** shall be based upon the hourly billing rates set forth in Section 11.7, unless a stipulated sum has been agreed upon by the Owner.

...

Compensation for any other Additional Services that may arise during the course of the Project shall be based upon the hourly billing rates set forth in Section 11.7, unless a stipulated sum has been agreed upon by the Owner.

§ 11.4 Compensation for Additional Services of the Architect's consultants when not included in Sections 11.2 or 11.3, shall be the amount invoiced to the Architect plus NA percent ( NA %), or as otherwise stated below:

NA

...

| | | | | |
|---|---|---|---|---|
| Schematic Design Phase | Fifteen | percent ( | 15 | %) |
| Design Development Phase | Twenty | percent ( | 20 | %) |
| Construction Documents Phase | Forty | percent ( | 40 | %) |
| Bidding or Negotiation Phase | Five | percent ( | 5 | %) |
| Construction Phase | Twenty | percent ( | 20 | %) |

...

| | |
|---|---|
| Principal in Charge | $230.00 / Hour |
| Project Manager | $175.00 / Hour |
| Senior Designer | $170.00 / Hour |
| Mechanical Engineer | $170.00 / Hour |
| Electrical Engineer | $170.00 / Hour |

Additions and Deletions Report for AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale. User Notes: (1382829686)

10

| | |
|---|---|
| Structural Engineer ....................................................... | $170.00 / Hour |
| Civil Engineer............................................................... | $170.00 / Hour |
| Project Architect .......................................................... | $170.00 / Hour |
| Design Architect ........................................................... | $155.00 / Hour |
| Interior Architect .......................................................... | $145.00 / Hour |
| Technician..................................................................... | $85.00 / Hour |
| Administrative | $65.00 / Hour |

**PAGE 23**

.8    ~~Architect's Consultant's expense of professional liability insurance dedicated exclusively to this Project, or the expense of additional insurance coverage or limits if the Owner requests such insurance in excess of that normally carried by the Architect's consultants;~~Not Applicable

...

**§ 11.8.2** For Reimbursable Expenses the compensation shall be the expenses incurred by the Architect ~~and the Architect's consultants plus     percent (    %) of the expenses incurred.~~plus Ten percent (10 %) of the expenses incurred.

**§ 11.8.3** If the insurance requirements listed in Section 2.6 exceed the types and limits the Architect normally maintains and the Architect incurred additional costs to satisfy such requirements, the Owner shall reimburse the Architect for such costs as set forth below.

The Architect shall be reimbursed by the Owner for the cost difference between the insurance requirements listed in Section 2.6 and the costs of any additional Owner required insurance types and limits, as quoted by the Architect's insurance carrier.

...

A licensing fee shall be negotiated as part of the Termination Expenses set forth in Section 9.7.

...

**§ 11.10.1** An initial payment of ~~($    )~~none required ($ 0) shall be made upon execution of this Agreement and is the minimum payment under this Agreement. It shall be credited to the Owner's account in the final invoice.

**§ 11.10.2** Unless otherwise agreed, payments for services shall be made monthly in proportion to services performed. Payments are due and payable upon presentation of the Architect's invoice. Amounts unpaid ( Thirty    (30 ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.
**PAGE 24**

Eighteen percent (18)  %  per annum

...

2.1      The Architect will exercise its best professional effort to interpret the Americans with Disabilities Act (ADA) Standards for Accessible Design and other applicable state, local and Federal requirements.  The Architect cannot and does not guarantee that its interpretation of the ADA legislation will be the same as other interpretations and therefore cannot guarantee the building's or project's compliance with the law.  The scope of services provided by the Architect is limited to the requirements of Titles II and III of the ADA.  The Architect cannot provide recommendations or advice concerning which ADA requirements or measures may be "readily achievable" nor can the Architect determine the priorities or phasing of selected measures.

12.2 The Architect accepts no liability for any plans or specifications produced under this agreement until such drawings are stamped as approved by all relevant building department officials.

**Additions and Deletions Report for AIA Document B132™ – 2009.** Copyright 1992 and 2009 by The American Institute of Architects. **All rights reserved.**
WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®
Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.
This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes:                                                                                                        (1382829686)

**11**

**12.3** The Architect acknowledges the importance to the Owner of the Owner's project schedule and agrees to put forth its best professional efforts to perform its services under this Agreement in a manner consistent with that schedule. The Owner understands, however, that the Architect's performance must be governed by sound architectural practices.

**12.4** The Architect will not stamp drawings produced for any phase of this project under the terms of this agreement until all invoices billed up to that point in the project have been paid in full.

**12.5** The Owner confirms that neither the Architect nor any of the Architect's subconsultants or subcontractors has offered any fiduciary service to the Owner and no fiduciary responsibility shall be owed to the Owner by the Architect or any of the Architect's subconsultants or subcontractors, as a consequence of the Architect's entering into this Agreement with the Owner.

...

      Not Applicable

...

      Not Applicable

...

*(List other documents, if any, including additional scopes of service forming part of the Agreement.)*

      None

**PAGE 25**

**Linda Tjaden, Chair**
**Floyd County Board of Supervisors**

**Donald F. Prochaska, AIA, NCARB, President**
 **Prochaska & Associates**

Additions and Deletions Report for AIA Document B132™ – 2009. Copyright 1992 and 2009 by The American Institute of Architects. All rights reserved.
WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:29:51 on 06/07/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
User Notes: (1382829686)

12

## *Certification of Document's Authenticity*
*AIA® Document D401™ – 2003*

I, Curtis A. Field, AIA, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 12:17:15 on 06/06/2018 under Order No. 4119959838 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document B132™ – 2009, Standard Form of Agreement Between Owner and Architect, Construction Manager as Adviser Edition, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

*(Signed)*

*(Title)*

*(Dated)*

**AIA Document D401™ – 2003.** Copyright © 1992 and 2003 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 12:17:15 on 06/06/2018 under Order No.4119959838 which expires on 11/05/2018, and is not for resale.
**User Notes:** (1364154732)

1

# Affidavit of Process Server

E-FILED 2021 JUL 30 3:57 PM FLOYD - CLERK OF DISTRICT COURT

## IOWA DISTRICT COURT FOR FLOYD COUNTY

(NAME OF COURT)

| Floyd County Board of Supervisors | vs | Prochaska & Associates, Inc. | LACV031736 |
|---|---|---|---|
| PLAINTIFF/PETITIONER | | DEFENDANT/RESPONDENT | CASE NUMBER |

I **Barbara Steil** _____, being first duly sworn, depose and say:  that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

**Service:** I ■served ☐was unable to serve : **Prochaska & Associates, Inc.**

NAME OF PERSON TO BE SERVED

with (list documents) **Original Notice & Petition and Jury Demand** _____

by leaving with **Jane H. Prochaska**          **Registered Agent**          At

     NAME                    RELATIONSHIP / POSITION

■ Residence **1302 So., 101st Street #323**          **Omaha, NE 68124**

     ADDRESS                    CITY / STATE

☐ Business _____

     ADDRESS                    CITY / STATE

On **July 29, 2021** _____ AT **11:30 AM-CST** _____

     DATE                    TIME

■ Inquired if subject was a member of the U.S. Military and was informed they are not.

Thereafter copies of the documents were mailed by prepaid, first class mail on_____

                                                   DATE

from_____

     CITY          STATE          ZIP

**Manner of Service:**

■ **Personal:** By personally delivering copies to the person being served.

☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.

☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.

☐ **Corporate:** By personally delivering copies to the person named above.

☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address    ☐ Moved, Left no Forwarding    ☐ Service Cancelled by Litigant    ☐ Unable to Serve in Timely Fashion

☐ Address Does Not Exist   ☐ Other_____

**Service Attempts:** Service was attempted on: (1)_____ (2)_____

                                 DATE      TIME               DATE      TIME

(3)_____ (4)_____ (5)_____

  DATE      TIME               DATE      TIME               DATE      TIME

**Description:.** Age **75** _ Sex **F** _ Race **W** _ Height **5'5"** _ Weight **120** _ Hair **Gray** _ Beard **N/A** _ Glasses **No**

*Barbara Steil*

SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this **30** day of **JULY**, 20**21**, by **BARBARA STEIL**

Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

GENERAL NOTARY - State of Nebraska
CAROLINE A MELSON
My Comm. Exp. October 19, 2024

SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of **NEBRASKA**



FORM 2      NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS